# No. 23-14044-E

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE ELEVENTH CIRCUIT

---

### DONALD J. TRUMP,

**Appellant,**

v.

### CABLE NEWS NETWORK, INC.,

**Appellee.**
.

---

### On Appeal from the United States District Court
### for the Southern District of Florida

---

### APPELLANT'S INITIAL BRIEF

---

**Richard C. Klugh, Esq.**           **Alejandro Brito, Esq.**
**Richard C. Klugh, P.A.**           **Brito, PLLC**
**40 N.W. 3rd Street, PH1**          **2121 Ponce de Leon Blvd., Suite 650**
**Miami, Florida 33128**             **Coral Gables, Florida 33134**
**Tel. (305) 536-1191**              **Tel: (305) 440-4385**

**Counsel for Appellant, President Donald J. Trump**

---

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellant files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Brito, Alejandro

Bryan Cave Leighton Paisner LLP

Cable News Network, Inc.

Edison, Eric C.

Gunster, Yoakley & Stewart, P.A.

Halligan, Lindsey

Ifrah Law PLLC

Klugh, Richard C.

LeMieux, George S.

Schroeder, Eric. P.

Singhal, Hon. Raag

Trusty, James M.

Underwood, Jr., Brian M.

Valle, Hon. Alicia O.

Warner Bros. Discovery, Inc. (Nasdaq: WBD)

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, President Donald J. Trump, respectfully requests oral argument. Oral argument would assist the Court in deciding the issues presented by this appeal, including the fact-bound questions of the meaning conveyed by the numerous defamatory statements.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS. . . . . . . . . . . . . . . . . . . . . . . . . . . .  C1

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    Course of Proceedings, Disposition in the District Court,
    and Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

    Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

ARGUMENT AND CITATIONS OF AUTHORITY. . . . . . . . . . . . . . . . . . . . . . .  17

I.    The District Court's Dismissal of the Complaint with Prejudice Was
    Erroneous Where It Was Mistakenly Premised on Analysis of Only Five
    of the Numerous Defamatory Statements That Demonstrate Pervasive,
    Ongoing False Claims of Knowing Lies and Misleading Nazi Linkage
    Throughout Defendant's Programming—Accompanied by Visual
    Imagery and Other Tie-ins to Hitler—and Where the Statements Were
    Neither Pure Opinion Nor Rhetorical Hyperbole, but Instead False
    Factual Propositions or Mixed Opinions Implying Underlying
    Defamatory Facts, Actionable as Defamation under Florida Law. . . . . . . . . . 17

        A.    The district court erred in unduly constricting the scope of review
            of actionable defamatory statements, failing to consider the
            totality and context of the defamatory statements, and finding that
            CNN's statements were pure opinion or rhetorical hyperbole,
            where Plaintiff stated plausible claims for defamation premised on
            CNN's pervasive and false accusations including false linkage of

Plaintiff with Hitler's lies and Nazism . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  1.  The district court foreclosed comprehensive consideration of the defamation allegations by limiting its review and analysis to only five highlighted examples of the more than sixty quoted defamatory statements in the statutorily-requisite pre-suit notice letter referenced by and attached to the complaint and failed to consider any of the defamatory statements in light of the many thousands of defamatory uses of the "Big Lie" accusation and hundreds of direct linkages to the Nazis' employment of the "Big Lie," that CNN falsely associated with the Plaintiff . . . . . . . . . 20

  2.  The challenged statements were false factual allegations that defamed Plaintiff or, at minimum, mixed, rather than pure, opinion, thus plausibly setting forth the basis for a claim for defamation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

  3.  The challenged statements, which were seriously conveyed and expressed as assertions of fact, were not mere rhetorical hyperbole . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

 B.  The determination of whether the challenged statements were reasonably capable of a defamatory meaning presented factual issues that, under Florida law, should properly have been left to the jury's determination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

II.  The District Court Abused its Discretion in Denying Plaintiff's Motion for Reconsideration or Rehearing and Alternative Motion for Leave to Amend, Where the Court Applied Inapt and Unduly Constricted Standards in Evaluating Clear Error or Manifest Injustice and Denying Leave to Amend, Contrary to Federal Procedural Requirements . . . . . . . . . . 40

 A.  The denial of Plaintiff's motion for leave to amend was an abuse of discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

 B.  The district court abused its discretion in denying the motion for reconsideration of its order dismissing the complaint with prejudice, where the court's failure to

consider the full context of the challenged statements amounted to clear error or manifest injustice supporting reconsideration. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

# TABLE OF CITATIONS

## Cases

*Arthur v. King*
  500 F.3d 1335 (11th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Basulto v. Netflix, Inc.*
  No.: 1:22-cv-21796, 2023 WL 7129970 (S.D. Fla. Sept. 20, 2023) . . . . . . . . . . 29

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bennet v. Hendrix*
  325 Fed. Appx. 727 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Church of Scientology of California v. Cazares*
  638 F.2d 1272 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 33, 34, 35

*Czeremcha v. International Ass'n of Machinists and
Aerospace Workers, AFL-CIO*
  724 F.2d 1552 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42, 43

*Dershowitz v. Cable News Network, Inc.*
  541 F. Supp. 3d 1354 (S.D. Fla. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Dibble v. Arvich*
  No. 14-CIV-61264, 2015 WL 12532615 (S.D. Fla. July 29, 2015) . . . . . . . . . . 28

*Dowdy v. Proctor & Gamble Mfg. Co.*
  267 F.2d 827 (5th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Dreggors v. Wausau Inc. Co.*
  995 So.2d 547 (Fla. 5th DCA 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28, 37

*Eastern Air Lines, Inc. v. Gellert*
  438 So.2d 923 (Fla. 3d DCA 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32

*Foman v. Davis*
371 U.S. 178 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Ford v. Rowland*
562 So.2d 731 (Fla. 5th DCA 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Fortson v. Colangelo*
434 F. Supp. 2d 1369 (S.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*From v. Tallahassee Democrat, Inc.*
400 So.2d 52 (Fla. 1st DCA 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Great Lakes Ins. SE v. Boat Rental Miami, Inc.*
2020 WL 264674 (S.D. Fla. Jan. 17, 2020). . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Griggs v. Hinds Junior College*
563 F.2d 179 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*
733 F.2d 1461 (11th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Hay v. Indep. Newspapers, Inc.*
450 So.2d 293 (Fla. 2d DCA 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Hoch v. Rissman, Weisberg, Barrett*
742 So.2d 451 (Fla. 5th DCA 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Ironworkers Local Union 68 v. Astrazeneca Pharms., LP,*
634 F.3d 1352 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson v. Borders*
36 F.4th 1254 (11th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Lipsig v. Ramlawi*
760 So.2d 170 (Fla. 3d DCA 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 32

*MacPhee v. Midex Group, Inc.*
73 F.4th 1220 (11th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 43

vi

*McQueen v. Baskin*
377 So.3d 170 (Fla. 2d DCA Nov. 17, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Michel v. NYP Holdings, Inc.*
816 F.3d 686 (11th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Milkovich v. Lorain J. Co.*
497 U.S. 1, 18-19 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Moorer v. Demopolis Waterworks & Sewer Bd.*
374 F.3d 994 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Morse v. Ripken*
707 So.2d 921 (Fla. 4th DCA 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*New York Times v. Sullivan*
376 U.S. 254 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Rubin v. U.S. News & World, Inc.*
271 F.3d 1305 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 38

*Thomas v. Farmville Mfg. Co.*
705 F.2d 1307 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 42, 43

*Toole v. Baxter Healthcare Corp.*
235 F.3d 1307 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Town of Sewall's Point v. Rhodes*
852 So.2d 949 (Fla. 4th DCA 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Turner v. Wells*
879 F.3d 1254 (11th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 28, 29

*Zambrano v. Devanesan*
484 So.2d 603 (Fla. 4th DCA 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Statutes and Other Authorities**

U.S. Const., amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 27

Fla. Stat. § 770.01 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 12

Fed. R. Civ. P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Fed. R. Civ. P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Merriam-Webster Dictionary* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Moore's Federal Practice* ¶ 15.07[2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## STATEMENT OF JURISDICTION

The court of appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which gives the courts of appeals jurisdiction over all final decisions of the district courts of the United States.  Appellant, President Donald J. Trump, timely appealed on December 11, 2023, from the final orders entered on July 28, 2023 (DE:31) (order of dismissal) and December 5, 2023 (DE:37) (order denying reconsideration or rehearing of order of dismissal), that dispose of all claims between the parties to this cause.

## STATEMENT OF THE ISSUES

**I.**    Whether the district court erred in dismissing, with prejudice, for failure to state a claim Plaintiff's complaint alleging defamation premised on factually false broadcasts and publications wrongfully asserting that Plaintiff knowingly disseminated lies to violate and suppress voter rights and that, to effectuate that goal, Plaintiff supposedly promulgated the Nazi "Big Lie" approach, where the district court:

> failed to analyze or otherwise consider more than 60 specific, documented defamatory statements in Plaintiff's comprehensive pre-suit notice letter, which set the parameters of actionable defamation under Fla. Stat. § 770.01, was made part of complaint, and from which examples were highlighted by Plaintiff;

> failed to give consideration to the pervasive, ongoing nature of Defendant's thousands of repeated false statements defaming Plaintiff, including Defendant's repeated Nazi-linked defamatory references throughout Defendant's news channel programming, accompanied by visual imagery and other associations with Hitler; misconstrued the complaint allegations showing that broadcasts and publications were neither pure opinion nor rhetorical hyperbole, but instead defamatory assertions conveying multiple factually false statements or, alternatively, mixed opinions implying underlying defamatory facts, actionable as

1

defamation under Florida law; and misapplied applicable law in determining that the challenged statements were not reasonably capable of a defamatory meaning, where these were largely factual issues that, under Florida law, should have awaited trial, and a jury's determination or, at minimum, summary judgment.

**II.**    Whether the district court abused its discretion in denying Plaintiff's motion for reconsideration or rehearing and alternative motion for leave to amend, where the court applied inapt and unduly constricted standards in evaluating clear error or manifest injustice, improperly dispensing with the requirement to evaluate the entirety of the challenged statements and the totality of the context and circumstances in which they were broadcast to the public, and improperly denied leave to amend contrary to the liberal pleading requirements applicable in the procedural context of the case.

## STATEMENT OF THE CASE

### Course of Proceedings, Disposition in the District Court, and Statement of Facts

Since January 2021, Defendant, Cable News Network, Inc. ("CNN")—a multinational news network and website that holds itself out as "the most honored brand" and "most trusted name in news" and which claims to "reach[] more individuals on television and online than any other news organization in the United States," DE:1:5, ¶ 11—has falsely referred to President Trump at least 7,700 times as purveying the "Big Lie" in questioning improprieties in the 2020 Presidential election. DE:1 24 & n. 27.

The "Big Lie" is a notorious term that denotes Nazi propaganda used for repression, including specifically of the Jewish people. DE:1:12–13, ¶ 23 & n. 26; *see Joseph Goebbels: On the Big Lie*, Jewish Virtual Library, https://www.jewishvirtuallibrary.org/joseph-goebbels-on-the-quot-big-lie-quot#goog le_vignette (hereinafter "*Joseph Goebbels: On the Big Lie*")(explaining how Hitler first used the term "big lie" to defame the Jewish people; "The original description of the big lie appeared in *Mein Kampf.* Adolf Hitler applied it to the behavior of Jews rather than as a tactic he advocated. Specifically, he accused Viennese Jews of trying to discredit the Germans' activities during World War I.").

CNN broadcast thousands of patterned news show claims and published

3

equivalent false assertions that Plaintiff manufactured the "Big Lie," the term associated with Nazi propaganda used by Hitler in furtherance of crimes against humanity (with CNN using historical references to insure its repeated assertions of the "Big Lie" took on the intended gravity of the defamation). By stating, as a fact, that Plaintiff adopted Hitlerian and Nazi tactics of lies and oppression, and was not exercising his right to assert a political viewpoint regarding an election, CNN intended to falsely and directly link Plaintiff with lying, repressive Nazi propaganda. In response, Plaintiff sent a letter to CNN on July 21, 2022, in accordance with the requirements of Fla. Stat. § 770.01,[1] demanding that CNN retract its defamatory statements. DE:8-1. The demand letter noted that Plaintiff's challenge to the 2020 Presidential election was premised on widespread reports of irregularities stemming from, among others, greatly-expanded early voting and mail-in ballot usage. DE:8-1:2. The letter, which set forth and documented more than sixty instances of defamation, also observed, inter alia, that previously CNN had repeatedly broadcast assertions challenging the legitimacy of President Trump's election in the 2016 Presidential election. *Id.* The letter clearly explained that the defamation served the purpose of personally harming President Trump for raising issues of election fairness, including as to substantively and procedurally debated rules changes that occurred in irregular fashion during the course of an election year.

---

[1] Section 770.01 sets forth the requirements of notice as a condition precedent to an action for libel or slander under Florida law.

In an email response, CNN doubled down on its thousands of defamatory statements by incorrectly asserting that President Trump's questioning of the propriety of the 2020 presidential election amounted to lies that been contradicted by authoritative judicial and other governmental proceedings. DE:1:4–5, ¶ 10 & n. 5 (CNN email response to Plaintiff demand letter asserting, inter alia, that the falsity of Plaintiff's election claims was "well-established," that CNN's assertions had been verified, and that "judges across the United States" had refuted the fraud claims). CNN refused to retract any of the defamatory statements. *Cf.* DE:35:2 (CNN asserts false factual claim that Plaintiff's election process claims have been "disproven"); DE:20:2 (CNN asserts false factual claims that Plaintiff's beliefs about the election have been "debunked" and are "unfounded," and that "evidence of material election fraud does not exist").

In the demand letter, the allegations of which were appended to the complaint and specifically referenced in the crucial paragraph 28 of the complaint on which the district court focused, Plaintiff identified and quoted more than sixty representative instances of CNN's thousands of defamatory uses of the "Big Lie" attack, which included broadcasting a photographic image of Hitler (conveying Nazi messaging to the German people) in attempt to drive home the defamatory association of Plaintiff with Hitler. DE:1:4, 7–8, ¶¶ 10, 16, 28; DE:8-1 (Exhibit to Complaint). The complaint highlighted the following examples "that were provided in the Plaintiff's

5

Notice Letter [DE:8-1] that CNN refused to retract":

> January 25, 2021: CNN-published article by Ruth Ben-Ghiat, a "frequent contributor to CNN Opinion," purporting to verify the assertion that "Trump's big lie" "worked" because of "his thousands of little lies." The article refers to Plaintiff as "a leader of authoritarian intentions and tendencies," who "admires" "foreign autocrats," wanted to "revoke or destroy the First Amendment," and "unleash[ed] a barrage of disinformation common in authoritarian states." [DE:1:14–15, ¶ 28(a)].

> July 5, 2021: CNN-published article by CNN Editor-at-Large Chris Cillizza, accusing Plaintiff of admitting pursuit of a "disinformation strategy." Cillizza likened Plaintiff to Nazi propagandist Joseph Goebbels, by stating that Plaintiff's assertion "was a near-replication of this infamous line from Nazi Joseph Goebbels: 'If you tell a lie big enough and keep repeating it, people will eventually come to believe it.'" [DE:1:15, ¶ 28(b)].

> September 15, 2021: CNN-published article by Cillizza entitled "Donald Trump's Mental Health becomes an issue again." Cillizza wrote that Plaintiff "continued to push the Big Lie that the election was somehow stolen despite there being zero actual evidence to back up that belief."

6

[DE:1:15–16, ¶ 28(c)].

January 16, 2022: CNN-broadcast of television show entitled "State of the Union," in which host Jake Tapper states, while playing video clips of Plaintiff, that "while Martin Luther King III was in Arizona rallying to expand voting rights, Donald Trump was, the same day, in the same state, doing the exact opposite, continuing to push his big lie" and that "Trump was in Arizona, to push the legislature to disenfranchise the state's voters based on all of his deranged election lies." [DE:1:16, ¶ 28(d)].

February 11, 2022: CNN-published article by Cillizza, asserting the "terrible reality" that "Trump's election lie is on the march" and the "Trump 2020 election lie is working." Cillizza claims "Trump's big lie" is "insidious[]" and that "by sheer repetition, his false claims are wheedling their way into the consciousness of the public. [DE:1:16, ¶ 28(e)].

These allegations of defamation included CNN anchor Jake Tapper's claim that while others were seeking to expand voting rights, Plaintiff was using the "Big Lie" to do "the exact opposite." DE:20:4.

Despite admonition from CNN's then-Chairman and Chief Executive Officer Chris Licht on June 15, 2022, regarding the use of the term "Big Lie," CNN's on-air

7

personalities, including John King, Jake Tapper, John Avlon, Brianna Keilar, and Don Lemon, among others, continued to use this phrase to describe Plaintiff.  DE:1:14, ¶ 26 & n. 29.  CNN's harmful, false castigation of Plaintiff as pursuing the "Big Lie" strategy—an epithet not used by CNN against any other American public figure—not only derided his honesty and trustworthiness, by stating that he knowingly and intentionally lied in every comment about 2020 election integrity issues, but aligned him with arguably the most evil, murderous political figure and regime in history and falsely and maliciously asserted that his purpose was equally persecutive and violative of individual rights.  CNN's Editor-at-Large described "Trump's big lie" as "insidious" and like an ear worm "wheedling [its] way into the consciousness of the public."  DE:1:13–14, ¶ 25 & n. 28.

CNN broadcasts ensured that viewers would believe the false statements aired by CNN linking Plaintiff to Hitler's "Big Lie."  On January 9, 2022, CNN broadcast "Special Report": "The Fight to Save Democracy" by CNN news anchor Fareed Zakaria.  In the program's promotional video, Zakaria states: "Democracy everywhere is under attack.  But remember, America has been here before.  America has vanquished demagogues before.  So how do we do it now?"  The Report itself, which discussed Plaintiff's challenge to election integrity in the 2020 Presidential election, shockingly juxtaposed footage of Plaintiff with the ascendancy of Hitler and Nazi Germany.  The program was followed by a barrage of viewers' comments on Twitter

indicating that people believed Zakaria's broadcast was true:

> "Excellent and chilling. **The parallels with the rise of Hitler are obvious** and undeniable right down to the lies and conspiracy theories."

> **"Fareed Zakaria lays out the ways in which this threat is real and parallels historical threats. This report is a must see in the hope that it's not already too late."**

> "The similarity between Hitler in 1930's Germany and Trump in 2016 are notorious. And the way you made the segment by on and off alternate images of both. **Even if not apparent before, you made it now**. Wish you can post in stream."

> **"EVERY American should have to watch this special**. Two BIG take aways: Trump is not Hitler. But he is taking every play from Hitler's playbook. Liberals, put your agenda on hold because we are busy saving democracy right now!"

DE:1:8–9, ¶ 17 (emphasis added).

In light of CNN's failure to retract its defamatory statements and the ongoing deleterious impact of CNN's false attributions, Plaintiff filed a complaint against CNN on October 3, 2022, asserting claims for defamation per se (Count I) and for defamation (Count II). DE:1.

On November 22, 2022, CNN moved to dismiss the complaint, repeating its incorrect contention that the statements challenged by President Trump somehow set forth established facts, including that there was no fraud in the 2020 Presidential election, while simultaneously and contradictorily arguing that the statements (alleging, inter alia, that Plaintiff engaged in "the Big Lie" regarding fraud in the 2020

Presidential election) were merely "hyperbole" and "pure opinion." DE:20:1, 2. Plaintiff filed an opposing response, DE:21, to which CNN submitted a reply. DE:22. On July 28, 2023, without holding a hearing, the district court issued an order granting the motion to dismiss with prejudice. DE:31. The Order erroneously reviewed the defamation issue as limited to five examples of "Big Lie" allegations derived from the retraction request and pre-suit notice letter attached to, and referenced in paragraph 28 of, the complaint, and found that "the complained of statements [*i.e.,* just those five highlighted examples from the notice letter] are opinion, not factually false statements, and therefore are not actionable." *Id.* at 7. The district court further ruled that, while the five statements addressed in the order were "odious and repugnant," such "references in the political discourse" were nothing more than "bad rhetoric" that could not have led to viewers associating Plaintiff with persecutive purposes of Nazi propaganda. *Id.* at 9; *see id.* at 10 (district court rules that merely accusing someone of "[b]eing 'Hitler-like' is not a verifiable statement of fact that would support a defamation claim").

The district court erroneously determined that its evaluation of the defamatory nature of CNN's broadcasts and publications was proper at the motion to dismiss stage. DE:31:10. In addition, the court ruled, by way of footnote, that because leave to amend had not yet been requested, dismissal with prejudice was appropriate without leave to file even a first amended complaint. *Id.* at 10 n. 9. However, the

court's order did not indicate that its dismissal of the complaint constituted a dismissal of the action, nor was a judgment issued or entered.

On August 7, 2023, just 10 days after the dismissal order, Plaintiff moved for reconsideration or rehearing, and alternatively moved for leave to amend his complaint in order to correct any perceived pleading deficiency and to explicitly set forth the claim of defamation by implication.  DE:32, 36.  CNN's response to the motion acknowledged that Plaintiff's complaint already encompassed a claim for defamation by implication in asserting that CNN's repeated association of Plaintiff with Nazi terminology implied that Plaintiff was "Hitler-like." DE:35:13.

On December 3, 2023, the district court denied Plaintiff's motion for reconsideration or rehearing and also denied Plaintiff's alternative motion for leave to amend.  DE:37.

## Standards of Review

This Court reviews the grant of a motion to dismiss de novo.  *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The allegations

11

in the complaint must be accepted as true and construed in the light most favorable to the plaintiff." *Michel*, 816 F.3d at 694 (citing *Ironworkers Local Union 68 v. Astrazeneca Pharms., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). Further, "[w]hether a statement is one of fact or opinion is a question of law, subject to de novo review." *Town of Sewall's Point v. Rhodes*, 852 So.2d 949, 950 (Fla. 4th DCA 2003).

The denial of a motion for reconsideration or rehearing is reversible for an abuse of discretion. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000). The denial of leave to amend sought on reconsideration is likewise reversible for an abuse of discretion. *See MacPhee v. Midex Group, Inc.*, 73 F.4th 1220, 1238 (11th Cir. 2023); *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983).

## SUMMARY OF THE ARGUMENT

The district court erred in failing to evaluate the totality of the complaint's allegations of defamation, including all quoted and documented broadcasts and publications that CNN had refused to retract despite Plaintiff's request under Fla. Stat. § 770.01. After unduly narrowing the scope of the defamation at issue, the district court erroneously concluded that CNN's statements could not be viewed by a jury as factual claims, but rather mere rhetoric or opinion. The allegations, particularly at the motion to dismiss stage, show the contrary.

The dismissal ruling presents an opportunity for this Court to resolve an

12

unsettled question regarding the scope of a broadcaster's right to avoid defamation liability in the face of its unprecedented multiple-media effort to falsely accuse Plaintiff of intentionally and illegitimately pursuing a "Big Lie" propaganda strategy, repeatedly broadcasting purported factual presentations falsely and maliciously accusing Plaintiff of knowingly and intentionally making false claims of election fraud and irregularities and of doing so as part of an insidious propaganda plan to repress wide swathes of the voting population. CNN repeatedly defamed Plaintiff by asserting as a fact the false accusation, which CNN's representatives made with utmost seriousness and on a continuing basis, that Plaintiff was intentionally manufacturing election lies with the same effect and purpose as Hitler's racist, genocidal lies.

The allegations of the complaint, accepted as true and construed in the light most favorable to Plaintiff, stated plausible claims for defamation against CNN under Florida law. In dismissing Plaintiff's complaint with prejudice, the district court mistakenly discounted entirely all but five of Plaintiff's specifically documented instances of defamation and failed to take into consideration the thousands of additional equivalent statements challenged as defamatory that were the subject of Plaintiff's complaint, despite the fact that the complaint specified additional offending statements and imagery, alleging, in total, more than 7,700 defamatory statements. *See* DE:21:14 (Plaintiff argues in response to motion to dismiss that "the Court should look at *all* allegations in the complaint) (emphasis in Plaintiff's response). Moreover,

13

even with respect to the five statements it considered, the district court erred further in finding that CNN's publications were merely pure opinion or bad rhetoric, rather than factual propositions and in failing to permit the Plaintiff to amend to provide further detail and explanation of the defamatory statements, including those the district court chose not to consider.

As set forth in the complaint, CNN wrongfully stated that Plaintiff's assertions of fraud in the 2020 Presidential election process was a lie on the order of the "Big Lie," a Nazi propaganda design used by Hitler and the Nazi regime. CNN's attribution of lies to Plaintiff with regard to the election's integrity was a false statement of fact by CNN—made over and over again. The complaint's allegations about the underlying facts were, as CNN conceded, presumed true for purposes of the motion to dismiss. Thus, debates about the extensive indicia of election irregularities detailed by Plaintiff and showing that his belief was far from baseless, DE:8-1:6–10 (Ex. to Complaint), were not in dispute.

The defamatory statements put forth a bundle of factually-false allegations, including about various aspects of the 2020 Presidential election, about Plaintiff's understanding of what took place in the election, about Plaintiff's intention in expressing views about the election, and about whether the Nazi propaganda disinformation campaign used for oppression (which included brutal intimidation) related in any way to Plaintiff's statement of his views, which it did not. At a

14

minimum, dismissal of the complaint without even the filing of an answer by CNN was premature.

The district court's further failure to examine CNN's statements in light of the widespread, thematic, visual, and false linkage of Plaintiff with Hitler, Nazism and Nazi propaganda throughout CNN's news channel programming—including 645 instances in which Plaintiff was linked within ten words of Hitler and Nazis, DE:1:12 ¶ 20, and over 7,700 instances in which Plaintiff was asserted to have used the "Big Lie" strategy and/or told the "Big Lie"—reflects a structural infirmity in the district court's analysis of Plaintiff's claims that is at odds with the requirement for evaluating defamation in light of the entirety of surrounding circumstances, including the language used and the context in which the statements were made.

The district court alternatively erred in failing to consider that the challenged statements were mixed opinions that implied the existence of undisclosed defamatory facts—including Plaintiff's attributed, in reality nonexistent, use of an actual Nazi propaganda technique—as the basis for the statements. The district court erred further in deciding as a matter of law that CNN's publications were not reasonably capable of a defamatory meaning, where that assessment reaches questions of fact reserved for a jury's determination.

The district court erred in denying Plaintiff's motion for reconsideration or rehearing and alternative motion for leave to amend, where the court's rulings were

premised on legally improper and unduly constricted standards for evaluating the propriety of reconsideration and leave to amend, contrary to federal procedural requirements. The district court's structural lapse in failing to consider the entirety of the defamatory statements alleged in the complaint, reflecting the staggering breadth and scope of CNN's ongoing, malicious, and defamatory linkage—both in broadcast statements and imagery—of Plaintiff with Hitler and Nazism, amounted to clear error and manifest injustice warranting reconsideration.

In addition, denial of Plaintiff's timely motion for leave to amend the complaint was an abuse of discretion, where governing authority provides that amendment must be liberally granted in the procedural context of this case, in which judgment was not entered, especially since the district court did not determine that viable amendment was not possible or that dismissal of the complaint constituted dismissal of the action.

ARGUMENT AND CITATIONS OF AUTHORITY

**I.     THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT WITH PREJUDICE WAS ERRONEOUS WHERE IT WAS MISTAKENLY PREMISED ON ANALYSIS OF ONLY FIVE OF THE NUMEROUS DEFAMATORY STATEMENTS THAT DEMONSTRATE PERVASIVE, ONGOING FALSE CLAIMS OF KNOWING LIES AND MISLEADING N A Z I   L I N K A G E   T H R O U G H O U T   D E F E N D A N T ' S PROGRAMMING—ACCOMPANIED BY VISUAL IMAGERY AND OTHER TIE-INS TO HITLER—AND WHERE  THE STATEMENTS WERE NEITHER PURE OPINION NOR RHETORICAL HYPERBOLE, BUT INSTEAD FALSE FACTUAL PROPOSITIONS OR MIXED OPINIONS IMPLYING UNDERLYING DEFAMATORY FACTS, ACTIONABLE AS DEFAMATION UNDER FLORIDA LAW.**

**A.     The District Court Erred in Unduly Constricting the Scope of Review of Actionable Defamatory Statements, Failing to Consider the Totality and Context of the Defamatory Statements, and Finding That CNN's Statements Were Pure Opinion or Rhetorical Hyperbole, Where Plaintiff Stated Plausible Claims for Defamation Premised on CNN's Pervasive and False Accusations Including False Linkage of Plaintiff with Hitler's Lies and Nazism.**

In determining whether "statements were capable of defamatory meaning and [whether] the court should not have decided the question at the Motion to Dismiss" stage, *see Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1285 (5th Cir. 1981), several factors in this case show that the district court erred.  First, the district court failed to consider the totality of the fully articulated allegations of defamatory

17

statements, including the more than sixty instances of defamation set forth in the Notice Letter to CNN incorporated into the complaint as an exhibit and from which examples were highlighted in the complaint. Instead, the district court considered only five defamatory statements, thereby unduly narrowing the actual scope of the complaint. Second, the district court failed to analyze and consider the totality of the nearly 7,700 instances in which CNN had defamed Plaintiff with the "Big Lie" allegation, an unprecedented, wrongful barrage linking Plaintiff to the notorious Nazi "Big Lie" propaganda used to oppress by means of knowing lies characterized by their *complete* falsity, hence *big* lies. Third, the district court erred in ruling that the limited selection of defamatory statements the court considered constituted pure opinion, where CNN's own explanation of those statements was that they were intended to convey factual premises that could readily be verified or refuted, such as CNN's incorrect assertion that all claims of fraud had been "disproven" in appropriate proceedings and that all judges to whom fraud claims were presented had found on the merits of the claims that the election was "unaffected by fraud." DE:1:4–5 n. 5. Thus, the district court wrongly concluded that only expressions of pure opinion were involved, where particularly at the motion to dismiss stage, and in light of CNN's own explanations of the statements, it was at least a jury question whether CNN was conveying news asserted to be fact-based or, at a minimum, mixed opinions containing a false factual component. Fourth, the district court too narrowly

18

addressed the relevance of the patterned, malicious, and defamatory linkage to Hitler, Goebbels, and the Nazi defamation used as a predicate for the Holocaust and condemned in the Nuremberg trial of crimes against humanity.[2]  The district court mischaracterized the CNN statements as suggesting Plaintiff was "Hitler-like," which CNN had admittedly done in other contexts for years, and is defamatory on its own. But the "Big Lie," Hitler, and Nazi references in the context of this case were of a different order: they were meant to, and did, directly convey that Plaintiff had adopted the Hitlerian tactic of intentionally using gross lies in propagandistic communication in order to facilitate repression.  In this case, CNN alleged the falsely alleged a tactic of repression of voting and political rights.

The district court wrongly concluded that an allegation of such actions is not verifiable on factual terms—even though the same types of allegations were sustained in the Nuremberg trials for the imposition of criminal punishment. *See The Propaganda Prosecutions at Nuremberg*, 39 Loy. L.A. Int'l & Comp. L. Rev. at 234–35.

Finally, the district court failed to decide the issue of malice and weigh its relevance to the meanings to be attributed to the allegedly defamatory statements, even as the district court mistakenly concluded that Plaintiff's actual malice contention

---

[2] Gregory S. Gordon, *The Propaganda Prosecutions at Nuremberg: The Origin of Atrocity Speech Law and the Touchstone for Normative Evolution*, 39 Loy. L.A. Int'l & Comp. L. Rev. 209 & sources cited therein (2017).

rested on allegations of CNN's longstanding political opposition to Plaintiff, such that CNN operates much like an opposition political entity that has abandoned any balanced presentation of facts. *See* DE:31:8 (ruling that "[a]cknowledging that CNN acted with political enmity does not save this case [because] the Complaint alleges no false statements of fact").[3]

1. **The district court foreclosed comprehensive consideration of the defamation allegations by limiting its review and analysis to only five highlighted examples of the more than sixty quoted defamatory statements in the statutorily-requisite pre-suit notice letter referenced by and attached to the complaint and failed to consider any of the defamatory statements in light of the many thousands of defamatory uses of the "Big Lie" accusation and hundreds of direct linkages to the Nazis' employment of the "Big Lie," that CNN falsely associated with the Plaintiff.**

The district court mistakenly limited its analysis to only five alleged defamatory statements, discounting the more than sixty specifically documented defamatory statements set forth in the statutorily-required notice letter, statements which the complaint alleged CNN had refused to retract. The district court also discounted the many thousands of defamatory statements that were sufficiently identified and challenged in the complaint. Moreover, even as to the five highlighted statements in paragraph 28 of the complaint, the court erred in concluding that CNN's publications

---

[3] Under Florida law, defamation consists of publication, falsity, knowledge or reckless disregard of falsity, actual damages, and a defamatory statement. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

were merely pure opinion or bad rhetoric, rather than factual propositions or mixed opinions premised on underlying defamatory facts.

CNN's actions had the intended effect of wrongfully Hitlerizing Plaintiff's election concerns in the eyes of millions of viewers, which CNN accomplished by repeatedly, falsely, and misleadingly stating that there was no consequential election impropriety and no credible evidence of the same, that judicial decisions had established as a matter of law and beyond doubt that there was no relevant election fraud, and that Plaintiff was lying when he asserted his concerns about the election, and was knowingly using the Nazi-like "Big Lie" in some sort of scheme to harm individual rights.

The district court misconstrued the allegations of the complaint, and failed to conduct the review required to properly evaluate the defamatory nature of the relevant statements, broadcasts, visual media presentations, and publications by CNN and whether to grant leave to amend. The complaint's pre-suit notice exhibit, which set the boundaries of the defamation claims, listed not only the five instances highlighted in paragraph 28 of the complaint, but also documented and quoted scores of CNN broadcasts and publications showing how CNN, over the course of two years preceding the complaint's filing, uttered, published, and broadcast factually defamatory statements designed to harm Plaintiff, all of which employed the basic false "Big Lie" allegations that CNN weaved into its programming.

21

The scores of defamatory broadcasts had a consistent pattern. The defamation was the falsehood that Plaintiff was lying about widespread vote fraud and irregularities; that Plaintiff knew that there was no widespread fraud or improprieties, that the extent of any election problems had been fully and fairly determined, and that voting fraud or other illegalities could not have affected the 38 electoral college votes that Plaintiff needed to win re-election; that Plaintiff was knowingly and willfully using the "Big Lie" and enlisting others to assist him—and was following the Hitler/Goebbels/Nazi "Big Lie" strategy—in order to suppress, restrict, and deny voting rights; and that Plaintiff's alleged lying and manipulation to suppress election rights was on a par with the evil, "Big Lie" actions of the Nazis universally condemned as crimes against humanity.

In the more than sixty documented examples put forward in the appended retraction request letter, which limited the scope of actionable defamation under Florida law, Plaintiff identified the multifaceted, defamatory character of the statements and placed in context their extreme harmful and prejudicial nature. In many of the instances documented and quoted in the complaint, CNN made it clear that it was not merely conveying opinions, but was stating what it conveyed as a , fact that everything Plaintiff had said about the election was an intentional lie on his part. CNN further made it clear that it was not merely opinion, but a supposed settled fact, according to CNN, that Plaintiff was using intentional lies as part of a coordinated

22

strategy with others, along the lines of conspirators, to frustrate, delay, suppress, and extinguish constitutional rights to vote. CNN expressed that it was an undisputed fact that Plaintiff, due to intentional use of Nazi tactics, was adopting the approach of the "Big Lie" that was used by Adolf Hitler as a predicate for the Holocaust. The complaint, including its appended factual detail, alleged that CNN knew that it was a regular and ordinary practice for politicians and government officials in close elections such as this one (remarkably decided by vote counts reflected in less than .0004 % of the ballots, or 55,000 voters, in an election with more than 160 million ballots) and that CNN had repeatedly stated that such election result questions in close elections was a normal and legitimate practiceto call into question whether fraud had affected the outcome and that CNN had repeatedly stated that this was a normal and valid practice, including by Hillary Clinton and her acolytes in 2016. CNN adopted a contrary, hypocritical premise related to the Plaintiff: that Plaintiff knew for a fact not only that there was no fraud of any consequence, no widespread fraud in any state, and no fraud that could have affected an electoral college vote, but also that all of these factual issues were resolved after full and adequate litigation on the merits in courts with jurisdiction, and that he unlike all others, who had a right to take such a position as to the 2020 or any other election, could not do so, because he was intentionally lying and defrauding Americans of the right to vote. CNN's premise is counterfactual and defamatory.

23

**2.    The challenged statements were false factual allegations that defamed Plaintiff or, at minimum, mixed, rather than pure, opinion, thus plausibly setting forth the basis for a claim for defamation.**

It is undisputed that the motion to dismiss was not the vehicle to determine whether the complaint's allegations were true, but rather to determine whether the law compels a finding of no possible relief. Here, the allegations that are well supported and well documented by multiple instances (including those not taken into consideration by the district court) which went beyond passing aspersions of association with Hitler and the Nazis. The defamatory statements were factually false on multiple points, and could not be disposed of on a motion to dismiss, particularly where the district court failed to consider each of the specifically expressed allegations of defamation and excluded further from the analysis the consideration of the totality of the circumstances, including the enormity and patterned nature of the overwhelming use of defamation to wrongly convince CNN viewers and other consumers of its publications that it is not a matter of opinion, but a fact that Plaintiff was somehow lying and using the lie in a Nazi manner to the detriment of Americans, all such claims being totally and completely false.

CNN's statements thus indisputably purport to be assertions of unequivocal fact, not opinion. Vitally, CNN's statements that Plaintiff has engaged in "lies" about the election's integrity are false, given the lengthy grounds supporting Plaintiff's views.

DE:8 (Notice of Filing Ex. to Complaint); DE:8-1:6–10 (Ex. to Complaint detailing indicia of 2020 Presidential election irregularities).

The district court failed to consider the totality of the relevant circumstances of the defamatory statements apart from the specific defamatory publications identified and incorporated as part of the complaint. By failing to consider, even in evaluating the few instances of defamation that the district court erroneously limited its consideration to, the totality of the defamation circumstances, the district further erred.

Viewed in light of CNN's effective bombardment of its audience with false statements that regularly and solemnly ascribed the telling of lies, including notably the "Big Lie" strategy of Hitler and Nazism, to Plaintiff, the entirety of the challenged publications—consisting of more than 7,700 statements—were not pure opinion but instead false assertions of fact or, alternatively and at the least, mixed opinions based on concealed or undisclosed defamatory facts, including false attributions to Plaintiff of using a reviled Nazi propaganda technique, and thus were actionable as defamation under Florida law.

In its response to Plaintiff's demand letter identifying dozens of instances of defamation, CNN did not claim its assertions were merely opinion but rather that its thousands of such statements were confidently premised on CNN's false claim that judges in more than 50 lawsuits had found that the election was not affected by fraud,

25

even as CNN admitted that those cases were resolved on procedural grounds—not trials on the merits—and where process or timing issues were key factors in such dismissals. *See* DE:1:5 n. 5.  Contrary to CNN, there was a substantial basis (whether or not accepted by all voters) to believe that improprieties affected a sufficient number of votes to harm the electoral outcome.[4]

Florida provides a cause of action for defamation per se based on a statement that charges an individual with an infamous crime, tends to subject him or her to "hatred, distrust, ridicule, contempt or disgrace," or tends to injure him or her in his business or profession.  *Rubin v. U.S. News & World, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001).  Further, a "communication is 'defamatory' if it tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party."  *McQueen v. Baskin*, 377 So.3d 170, 176 (Fla. 2d DCA Nov. 17, 2023) (internal citation and quotations omitted).

---

[4] *See* DE:8-1:9 (citing, inter alia, proof, including criminal convictions, of improper mail drop ballot "mules" impugning 20,000 unlawful ballots, as compared with a certified 10,457-vote margin, in Arizona; 30,000 similar illegal votes, as compared with a certified 11,779-vote margin, in Georgia; 275,000 similar illegal votes, as compared with a certified 80,555-vote margin, in Pennsylvania; and the July 8, 2022 Wisconsin Supreme Court holding that ballot drop boxes violate state law, where such illegality would be expected to affect the certified 21,000-vote margin in Wisconsin); *see also* DE:21:20–21 (describing relevant uncontested facts indicating substantial improprieties in 2020 election).

While statements of pure opinion are protected under the First Amendment, mixed opinion is not and can give rise to a claim for defamation. *See Hay v. Indep. Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d DCA 1984). A statement amounts to pure opinion "only if the speaker states the facts on which he bases his opinion." *Lipsig v. Ramlawi*, 760 So.2d 170, 184 (Fla. 3d DCA 2000) (citing *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981)). In contrast, a "[m]ixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication." *Dreggors v. Wausau Inc. Co.*, 995 So.2d 547, 551 (Fla. 5th DCA 2008) (quoting *Hay*, 450 So.2d at 295). Thus, a mixed opinion "implies that a concealed or undisclosed set of defamatory facts would confirm his opinion," and, as a result, is actionable. *Morse v. Ripken*, 707 So.2d 921, 922 (Fla. 4th DCA 1998). Importantly, simply calling something an opinion does not make it an opinion. As the Supreme Court has made clear:

> Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'

*Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18–19 (1990); *see also Lipsig*, 760 So.2d at 184 ("[A] speaker cannot invoke a 'pure opinion' defense if the facts underlying the opinion are

27

false or inaccurately presented."); *Eastern Air Lines, Inc. v. Gellert*, 438 So.2d 923, 927 (Fla. 3d DCA 1983) ("[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable.").

Rather, a court must "construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication" and "consider the context in which the statement was published," in order to determine whether a statement constitutes pure opinion. *Dreggors*, 995 So.2d at 551 (quoting *Hay*, 450 So.2d at 295); *see also Hoch v. Rissman, Weisberg, Barrett*, 742 So.2d 451, 460 (Fla. 5th DCA 1999) (stating that one looks to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or mixed opinion). "All of the circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published." *Dreggors*, 995 So.2d at 551 (quoting *Hay*, 450 So.2d at 295) (emphasis added); *see also Turner v. Wells*, 879 F.3d 1254, 1263 (11th Cir. 2018) (admonishing plaintiff for "cherry pick[ing] statements . . . out of context"); *Dibble v. Arvich,* No. 14-CIV-61264, 2015 WL 12532615, at *6 (S.D. Fla. July 29, 2015) ("In determining whether an allegedly defamatory statement is an expression of fact or an expression of pure opinion and/or rhetorical hyperbole, context is paramount.") (internal quotations and citation omitted) (emphasis added).

28

The issue of whether a statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation is generally a question of law for the court, *see Turner*, 879 F.3d at 1262–63, which assesses whether the disputed statement is "'sufficiently factual to be susceptible of being proved true or false,'" and whether it is actually false. *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)). However, "when a publication is 'susceptible of two reasonable interpretations,' one of which is defamatory," then the issue becomes one of fact for the jury. *Basulto v. Netflix, Inc.*, No.: 1:22-cv-21796-MORENO/GOODMAN, 2023 WL 7129970, * 22 (S.D. Fla. Sept. 20, 2023).

CNN repeatedly, falsely, maliciously, branded Plaintiff as purveying the "Big Lie," a term used by Hitler in *Mein Kampf*, in an effort to associate Plaintiff with Hitler and Nazism and the despicable tactics used to support Nazi crimes. DE:1:7–12, ¶¶ 16–21; DE:1:14–16, ¶¶ 26–28; *see also Joseph Goebbels: On the Big Lie*. The "Big Lie," as purveyed by Hitler and the Nazi regime, is commonly understood to mean, "If you tell a lie big enough and keep repeating it, people will eventually come to believe it.*" Joseph Goebbels: On the Big Lie.* CNN's anchors and commentators repeatedly used this damning phrase, including a direct reference to Hitler's Minister of Propaganda,

29

Joseph Goebbels,[5] to wrongfully describe Plaintiff and his questioning of the 2020 Presidential election.[6]

In the January 25, 2021 publication, Ben-Ghiat wrote "This is Trump's Big Lie,' a brazen falsehood with momentous consequences." Ben-Ghiat then went on to falsely describe Plaintiff as "a leader of authoritarian intentions and tendencies," and stated that "Trump took a different tack, unleashing a barrage of disinformation common in authoritarian states," by telling "more than 30,000 documented lies in public (30,573 was The Washington Post's final tally), on Twitter, at rallies and in interviews." DE:1:15, ¶ 28(a).

In the July 5, 2021 publication, Cillizza maliciously likened Plaintiff to propagandist Joseph Goebbels, writing that "[o]ne can only hope that Plaintiff was

_____

[5]    *See* https://en.wikipedia.org/wiki/Joseph_Goebbels ("Paul Joseph Goebbels was a German philologist and Nazi politician who was the ... chief propagandist for the Nazi Party, and then Reich Minister of Propaganda from 1933 to 1945. He was one of Adolf Hitler's closest and most devoted followers, known for his skills in public speaking and his deeply virulent antisemitism which was evident in his publicly voiced views. He advocated progressively harsher discrimination, including the extermination of the Jews in the Holocaust.").

[6]    The false association of Plaintiff with Nazi propaganda and lies has become commonplace in the media and public arena, and was invoked as a cudgel by President Biden during his 2020 Presidential campaign and echoed by the media. *See* https://www.politico.com/news/2020/09/26/joe-biden-trump-joseph-goebbels-422047 (Biden: "Trump is 'sort of like Goebbels,' Biden said, invoking the name of Joseph Goebbels, the mastermind of Nazi Germany's propaganda machine. "You say the lie long enough, keep repeating it, repeating it, repeating it, it becomes common knowledge" among voters.).

unaware that his quote was a near-replication of this infamous line from Nazi Joseph Goebbels: 'If you tell a lie big enough and keep repeating it, people will eventually come to believe it.'"  DE:1:15, ¶ 28(b).

In the September 15, 2021 publication, Cillizza wrote that Plaintiff "continued to push the Big Lie that the election was somehow stolen despite there being zero actual evidence to back up that belief."  DE:1:15–16, ¶ 28(c).

During the January 16, 2022 broadcast, which aired clips of Plaintiff, Tapper commented that "while Martin Luther King III was in Arizona rallying to expand voting rights, Donald Trump was, the same day, in the same state, doing the exact opposite, continuing to push his big lie," and that "[t]here is a reason Trump was in Arizona, to push the legislature to disenfranchise the state's voters based on all of his deranged election lies."  DE:1:16, ¶ 28(d).

In the February 11, 2022 publication, Cillizza wrote "Trump's election lie is on the march" with a link entitled "New poll suggests Trump 2020 election lie is working," claiming that "Trump has created a constant low-level buzz within the American electorate that something is wrong with the way we conduct elections.  That he has no proof doesn't seem to matter; by sheer repetition, his false claims are wheedling their way into the consciousness of the public."  DE:1:16, ¶ 28(e).

Each of these publications more than impugns Plaintiff's honesty and trustworthiness, characteristics necessary for virtually any person to engage in his or

31

her profession, including, most notably, a President of the United States. Underlying each publication is CNN's clear implication that Plaintiff, in questioning the integrity of the 2020 Presidential election, is using Hitler's "Big Lie" strategy as part of an authoritarian scheme to disenfranchise voters and strip them of their rights and freedoms. Each of the publications contains statements of purported fact—including that Plaintiff told massive, proven lies to the public and that there was no significant wrongdoing in the 2020 Presidential election—that the complaint alleges are false and thus defamatory under Florida law.

None of the publications, when examined in light of their full language and context, lend any support to a determination that CNN "accurately presented the underlying facts of the situation before making the allegedly defamatory remarks," which is required for a court to find the statements constituted pure opinion. *See Lipsig,* 760 So.2d at 184 ("[A] speaker cannot invoke a 'pure opinion' defense if the facts underlying the opinion are false or inaccurately presented."); *Eastern Air Lines,* 438 So.2d at 927 ("[A] statement that although ostensibly in the form of an opinion 'implies the allegation of undisclosed defamatory facts as the basis for the opinion' is actionable."); *Zambrano v. Devanesan,* 484 So.2d 603, 606 (Fla. 4th DCA 1986) ("[W]here the speaker or the writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise."). Indeed, none of the publications actually point to any evidence of Plaintiff allegedly

32

lying or the integrity of the 2020 Presidential election.

Contrary to the district court's assertion, repeated attribution to Plaintiff of engaging in the "Big Lie" links Plaintiff with Hitler in the public eye, and does not require the type of "stacking of inferences" found inadequate to set forth a claim for defamation in *Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1288 (5th Cir. 1981), premised on a speaker's use of the phrase "helter skelter." DE:31:8. The "Big Lie"—originated, used and associated with Hitler and Nazi propaganda, as proven by Defendant's use of images of Hitler and Nazis when discussing the term—is not remotely comparable to the far less recognizable, anodyne phrase "helter skelter." While used as the title of a prosecutor's book about Charles Manson, *id.* at 1287, the term "helter skelter" is otherwise of innocuous origin, meaning and use; the phrase is defined in the dictionary as simply "confusion" or "disorder." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/helter-skelter.

The "Big Lie," by contrast, remains a notorious term synonymous with Hitler, Nazi propaganda and gross distortions of truth. *See, e.g.*, *Merriam Webster Dictionary*, https://www.merriam-webster.com/dictionary/big%20lie (defining "Big Lie" as "a deliberate gross distortion of the truth used especially as a propaganda tactic" and specifying further that "the first known use of the big lie was in 1939"). Moreover, CNN's references to the "Big Lie" in relation to Plaintiff are pervasive and thematic, where CNN's use of that phrase has been accompanied by an onslaught of

33

statements, made repeatedly by multiple CNN newscasters condemning Plaintiff's "Big Lie" and other "lies," while simultaneously linking Plaintiff to Nazi leader Hitler, Nazi Chief of Propaganda Goebbels, and Nazi propaganda.  DE:1:14–16, ¶¶ 27–28. As alleged in the complaint, CNN has used the term the "Big Lie" in reference to Plaintiff more than 7,700 times, and has linked Trump within ten words of "Hitler" or "Nazis" on at least 645 occasions.  DE:1:12, 14, ¶¶ 20, 27.

The district court's patently inaccurate analogy of the challenged statements in this case to the phrase "helter skelter" by a single speaker in *Church of Scientology,* DE:31:8, reflects the district court's failure to consider CNN's challenged statements in light of the totality of relevant circumstances, which disclose a media outlet that, in purporting to report the news, wrongfully ascribes to Plaintiff gross and myriad lies, in addition to the "Big Lie," on an ongoing, regular basis.  The primary objectionable statement at issue in *Church of Scientology* was as follows: "I don't see," [City of Clearwater Mayor] Cazares said recently, "how we can allow a group into our town and be gung-ho about it, and be clear in our minds about it, and not go about it in a helter-skelter fashion."  *Id.* at 1287.  While "gung-ho" and "clear" were arcane terms of art allegedly associated with the Church of Scientology, and "helter skelter" was associated with a book about Manson, these were clearly used as double entendres, where all three phrases are also perfectly conventional terms with non-negative meanings, and the statement contains no direct, or even implicit, attribution of violent

34

criminality to the Church of Scientology. *See also id.* at 1288 (noting, while rejecting, mayor's assertion that his statement was meant to be humorous)[7].  By contrast, CNN's wholly serious statements directly link Plaintiff with vile, genocidal propaganda, including the widely known and condemned "Big Lie" strategy of Hitler and Nazism.

The seriousness with which CNN's conveyed its "Big Lie" denunciations of Plaintiff, including the January 6, 2022 "Special Report," with its deliberate comparisons of Plaintiff to Hitler and juxtapositions of Hitler and Nazi Germany with footage of Plaintiff, is confirmed by the many viewers who believed them, as reflected in their ensuing Twitter comments, all of which established the injurious impact of CNN's repeated false publications.  DE:1:7–9, ¶¶ 16-17.

Construing these publications in their totality, including by examining the words used, the ominous tones in which they were conveyed, and the uniquely voluminous amount of the broadcasts, it is certainly plausible that Plaintiff can prove to a jury of reasonable minds that CNN's broadcasters—who were part of "the most trusted name in news," *see* CNN Press Room, CNN World Fact Sheet, at https://cnnpressroom.blogs.cnn.com/cnn-fact-sheet/—knew their statements were

---

[7]  The ruling in *Church of Scientology* arose in the disparate procedural context of summary judgment as to plaintiff's third amended complaint, 638 F.2d at 1285—unlike the instant case, in which the district court, granting dismissal with prejudice and disallowing Plaintiff's ensuing request for leave to amend, unfairly precluded even a single amendment of the complaint.  *See* Argument at II(A)*, infra.*

false and uttered them anyway, knowing they would damage Plaintiff's reputation.

**3.    The challenged statements, which were seriously conveyed and expressed as assertions of fact, were not mere rhetorical hyperbole.**

The district court further erred in finding that, while CNN's statements were "odious" and "repugnant," such "references in the political discourse" were nothing more than bad rhetoric.  DE:31:9.

A defendant can only escape liability for defamation by contending it is "rhetorical hyperbole" when "the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation," which is definitively not the case here.  *Fortson v. Colangelo,* 434 F. Supp. 2d 1369, 1378–79 (S.D. Fla. 2006).

Here, the district court stated that "[n]o reasonable viewer could (or should) plausibly" connect CNN's use of the phrase the "Big Lie" in relation to Plaintiff's election challenge to a plausible inference that Plaintiff advocates the persecution and genocide of Jews or any other group of people.  The district court's interpretation of CNN's use of the phrase the "Big Lie" misses the mark, however.  As previously set forth, CNN used the terms "Nazi," "Hitler," "fascist," and the "Big Lie" to draw a direct and literal nexus, which does not exist, between Plaintiff and Hitler, Nazism, and fascist leadership, in order to establish that Plaintiff is somehow a despot who was trying to disenfranchise voters and strip Americans of their rights and freedoms by

36

wrongfully questioning the integrity of the 2020 Presidential election, not that Plaintiff was advocating the persecution and genocide of Jews or any other group.

The district court improperly decontextualized and unduly isolated CNN's defamatory statements, failed to consider the meaning the statements actually conveyed to viewers, and read distinguishable precedent too broadly.

A particular phrase cannot be viewed in a vacuum; instead, the court must examine "***all*** of the words used in the publication," and consider "***[a]ll*** of the circumstances surrounding the publication, including the medium by which it was disseminated and the audience to which it was published." *See Dreggors,* 995 So.2d at 551 (emphasis added); *see also Fortson,* 434 F. Supp. 2d at 1378–79 (stating that to determine if a statement is "an expression of fact or an expression of rhetorical hyperbole, context is paramount"). Construed in their totality, including that they were broadcast by a network proclaiming itself the "most trusted name in news," the challenged publications posit dire assertions of purported fact, not mere rhetorical hyperbole. CNN's email response to Plaintiff's demand letter, wrongfully averring that "it is well-established that the 2020 Presidential election was unaffected by fraud," DE:1:4–5, confirms the factual nature of its challenged statements, which were neither rhetorical hyperbole nor pure opinion but assertions of what the CNN broadcasters conveyed as being facts.

CNN's publications seriously attempt to falsely state that Plaintiff intentionally

37

followed Hitler's strategy to advance his own authoritarian political agenda.  CNN clearly intended that its publications be taken literally, not as part of conventional political discourse.  And it is certainly reasonable for the average CNN viewer to believe that CNN was an *unbiased* news source, not an opinion-driven platform.  *Bennet v. Hendrix,* 325 Fed. Appx. 727, 741 (11th Cir. 2009) (recognizing that "the tone of the speech and its medium of expression" are important considerations when determining whether a statement constitutes rhetorical hyperbole).  In fact, at least some of CNN's audience members actually wrongfully believed that Plaintiff was a fascist leader—akin to the most repugnant figure in modern history.

Moreover, as further discussed below, whether CNN's publications are reasonably susceptible to a defamatory meaning is a question of fact for the jury, not the district court, and the district court erred in making this determination.

**4.    The determination of whether the challenged statements were reasonably capable of a defamatory meaning presented factual issues that, under Florida law, should properly have been left to the jury's determination.**

The district erred in prematurely dismissing Plaintiff's defamation claims without a more fully developed record.  "[I]f an allegedly defamatory publication is reasonably susceptible of two meanings, one of which is defamatory and one of which is not, it is for the trier of fact to determine the meaning understood by the average reader."  *Rubin v. U.S. News & World Rep., Inc.,* 271 F.3d 1305, 1306 (11th Cir. 2001)

(citing *Ford v. Rowland,* 562 So.2d 731, 734 (Fla. 5th DCA 1990)); *see also Johnson v. Borders,* 36 F.4th 1254, 1275 (11th Cir. 2022) ("Where a statement is subject to two possible interpretations and one is defamatory, it is for the jury to decide whether the statement is in fact defamatory.") (citing *Hallmark Builders, Inc. v. Gaylord Broad. Co.,* 733 F.2d 1461, 1463 (11th Cir. 1984)).

The district court erred in ruling that even if CNN's linkage of Plaintiff to the "Big Lie" could plausibly compel a reasonable viewer to perceive him as Hitlerian or authoritarian, those attributions are not statements of fact subject to defamation laws because the terms are imprecise.  DE:31:9–10.

CNN did not, however, convey these terms in an ambiguous or vague way. Rather, the totality of the publications and the context in which the publications were made—under the guise of the "most trusted name in news"—make clear that CNN intended to, and did, use the terms "Nazi," "Hitler," "fascist," and the "Big Lie" to draw a direct and literal comparison between Plaintiff and Hitler, Nazism, and fascist leadership in order to try and create the undeniable, completely false, implication that Plaintiff is a despot who was trying to disenfranchise voters and strip Americans of their rights and freedoms by wrongfully questioning the integrity of the 2020 Presidential election.  Indeed, people actually believed what CNN's anchors and commentators were saying.  At a minimum, this determination should have been left for the jury to decide.

39

Finally, while the district court neither addressed nor decided whether Plaintiff plausibly alleged the defamation element of actual malice, such that it formed no part of the rulings on appeal, the record shows he more than sufficiently pled actual malice, including by alleging CNN's deliberate and relentless attacking of Plaintiff by labeling Plaintiff's concerns about the 2020 Presidential election the "Big Lie," likening Plaintiff to Hitler, and linking him with Nazism and the very form and design of Nazi propaganda used for purposes of oppression and rights violation. A plaintiff need only proffer facts giving rise to a "plausible inference" of actual malice. *See Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1367–68 (S.D. Fla. 2021) (holding that plaintiff's allegations plausibly plead a factual basis from which "actual malice" can be inferred).[8]

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OR REHEARING AND ALTERNATIVE MOTION FOR LEAVE TO AMEND, WHERE THE COURT APPLIED INAPT AND UNDULY CONSTRICTED STANDARDS IN EVALUATING CLEAR ERROR OR MANIFEST INJUSTICE AND DENYING LEAVE

---

[8] CNN's objective to destroy Plaintiff and anyone associated with him goes beyond mere political positioning and reflects obsessional hatred and malice. Additionally, if this Court were to reach this issue and conclude otherwise, Plaintiff respectfully requests that the Court revisit the actual-malice standard under *New York Times v. Sullivan*, 376 U.S. at 280. Recognizing this Court cannot overrule *Sullivan*, Plaintiff makes this argument to preserve the issue in the event of further review.

## TO AMEND, CONTRARY TO FEDERAL PROCEDURAL REQUIREMENTS.

**A.    The denial of Plaintiff's motion for leave to amend was an abuse of discretion.**

The district court abused its discretion in denying Plaintiff's post-dismissal request for leave to amend, where the denial was premised on an overly restrictive pleading standard at odds with governing authority.   The record confirms that following dismissal of the complaint, no judgment ever issued or was entered; nor did the court indicate that no amendment was possible or that dismissal of the complaint constituted dismissal of the action.   In these circumstances, leave to amend should have been "granted liberally."   *Czeremcha v. International Ass'n of Machinists and Aerospace Workers, AFL-CIO,* 724 F.2d 1552, 1556 & n. 6 (11th Cir. 1984) (clarifying Circuit case law and holding that, after dismissal of a complaint, the plaintiff "may still move the court for leave to amend, *and such amendments should be granted liberally,*" unless the court indicated an amendment was not possible or that the complaint's dismissal constituted dismissal of the action) (citing *Dowdy v. Proctor & Gamble Mfg. Co.*, 267 F.2d 827, 828 (5th Cir. 1959) (emphasis added)).

The only reason given by the district court for its denial was that allowing leave to amend would give Plaintiff a "second bite at the appeal" since he had not sought leave to amend before the complaint was dismissed. DE:37:2.   However, this Court has imposed no such barrier on seeking leave to amend following dismissal of a

41

complaint, and instead has made clear that leave to amend in this circumstance must be broadly allowed. *Czeremcha*, 724 F.2d at 1556. Indeed, leave to amend is "*particularly* appropriate following dismissal of a complaint for failure to state a claim." *Thomas v. Farmville Mfg. Co.*, 705 F.2d 1307, 1307 (11th Cir. 1983) (emphasis added). Moreover, "in the absence of a declared or apparent reason, an outright refusal to grant leave to amend is an abuse of discretion." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Notably, Plaintiff's motion for leave to amend, filed within ten days of dismissal of the complaint, was not untimely, nor is there any indication that granting leave to amend would have prejudiced the defendant. *See Griggs v. Hinds Junior College,* 563 F.2d 179, 180 (5th Cir. 1977) (reversing denial of post-dismissal leave to file amended complaint for abuse of discretion; noting no indication motion for leave to amend was untimely or would prejudice defendant). Nor did the district court state that no amendment was possible or that dismissal of the complaint constituted dismissal of the action. *Cf. Czeremska*, at 1556 n. 6.

Application of these established principles to the instant case militates firmly in favor of a determination that the district court abused its discretion in denying Plaintiff's motion for leave to amend. *See Thomas,* 705 F.2d at 1307 (concluding that the district court abused its discretion in denying leave to amend sought 13 days after dismissal of a complaint for failure to state a claim).

42

As in *Thomas*, the instant complaint was dismissed for failure to adequately state a claim. Within less time (only 10 days) than that taken by the plaintiff in *Thomas*, President Trump moved for reconsideration and, alternatively, for leave to amend his complaint to remedy the pleading deficiencies in the initial complaint, including to set forth an explicit claim for defamation by implication as elucidated in his motion. DE:32.

Further, while Plaintiff's motion for leave to amend was filed alternatively with a motion for reconsideration or rehearing under Rules 59 and 60, DE:31:2,11–15, the fact that no judgment was ever entered requires application of a liberal standard for allowing amendment of the complaint, as this Court held in *Czeremcha*.[9] 724 F.2d at 1556. *See also MacPhee v. Midex Group, Inc.*, 73 F.4th 1220, 1249–50 (11th Cir. 2023)(recognizing, with approval, the liberal pleading standard as held by *Czeremcha*).

All of these circumstances, viewed in accordance with prevailing authority, compel reversal of the district court's unsupported denial of Plaintiff's request for leave to file an amended complaint. *See Czeremcha,* 724 F.2d at 1556; *Thomas v. Farmville Mfg. Co.*, 705 F.2d at 1307. *See also Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 996–97 (11th Cir. 2004) (application of incorrect legal standard or clear

---

[9] As the Court in *Czermcha* additionally found, "The plaintiff may also move for relief under Fed. R. Civ. P. 59(e) or 60(b) on the basis of proposed amendments even after the action is dismissed and final judgment is entered." 724 F.2d at 1556 & n. 9 (citing *Moore's Federal Practice* ¶ 15.07 [2]).

error of judgment constitutes abuse of discretion).

**B.    The district court abused its discretion in denying the motion for reconsideration of its order dismissing the complaint with prejudice, where the court's failure to consider the full context of the challenged statements amounted to clear error or manifest injustice supporting reconsideration.**

The district court, in addressing the motion for reconsideration of its order dismissing the complaint with prejudice, applied an inapt standard of assessing the clear error or manifest injustice by failing to consider the entirety of the circumstances surrounding CNN's publication of the challenged statements. Those surrounding circumstances include huge numbers of statements, as well as visual imagery, unmistakably trying to link Plaintiff to Hitler and Nazism, as set forth in the complaint.

Moreover, the district court, after citing the applicable test for clear error or manifest injustice ("[C]lear error or manifest injustice occurs where the Court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Great Lakes Ins. SE v. Boat Rental Miami, Inc.*, 2020 WL 264674, at *6 (S.D. Fla. Jan. 17, 2020) (quotations omitted)), appeared to reframe its understanding of that standard in a manner unrelated to the case.[10]

---

[10] DE:37: 1 n. 1 ("For example, assume there is a game with no ties, only winners and losers. Three upper echelon teams play the game against a variety of opponents. One team plays an entire season and only wins. Two other teams play an entire season and

The district court's metaphorical explanation of the clear error or manifest error standard (even if stated in jest) is inconsistent with the governing standard, and any applicability to the instant circumstances appears ambiguous and inapt. Where the district court failed to evaluate the allegations of the complaint in light of the full context in which the challenged statements were made, including thousands of defamatory statements calling Plaintiff a purveyor of the "Big Lie" propaganda strategy originated and employed by, and notoriously associated with, Hitler and Nazis, as well as accompanying visual imagery of Hitler, its ruling was clearly erroneous or manifestly unjust, warranting the grant of Plaintiff's motion for reconsideration.

## CONCLUSION

For the foregoing reasons, Appellant, President Donald J. Trump, respectfully requests that the Court reverse the orders of dismissal and denial of reconsideration or rehearing or, alternatively, for leave to amend, and remand the case to the district court for further proceedings.

---

lose one game each. It is beyond dispute that the undefeated team has done everything it was asked to do—it has never failed. The teams that have lost have not succeeded in doing what they were asked to do. To reward the losing teams over the winning team is a manifest error.").

45

Respectfully submitted,

RICHARD C. KLUGH, P.A.                          BRITO, PLLC
40 N.W. 3rd Street, PH1                          2121 Ponce de Leon Blvd., Suite 650
Miami, Florida 33128                             Coral Gables, Florida 33134
Phone: (305) 536-1191                            Tel:  (305) 440-4385


By:    _Richard C. Klugh_____          By:    _Alejandro Brito_____
          Richard C. Klugh                              Alejandro Brito


*Counsel for Appellant, President Donald J. Trump*

46

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1), as well as 11th Cir. R. 32-4, because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 10,775 words. Undersigned counsel certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in 14-point Garamond font.

*Richard C. Klugh*
Richard C. Klugh

## CERTIFICATE OF SERVICE

I certify that on March 29, 2024, the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record and that requisite copies of the brief were mailed to the Court.

*Richard C. Klugh*
Richard C. Klugh

47