No. 23-14044-E

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

DONALD J. TRUMP,
*Appellant*,

v.

CABLE NEWS NETWORK INC.,
*Appellee*.

---

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 0:22-cv-61842-AHS

---

## BRIEF OF APPELLEE
## CABLE NEWS NETWORK, INC.

---

BRYAN CAVE LEIGHTON
PAISNER LLP
Eric P. Schroeder
Ga. Bar 629880
Brian M. Underwood, Jr.
Ga. Bar 804091
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:  404-572-6600
Facsimile:   404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

GUNSTER, YOAKLEY &
STEWART, P.A.
George S. LeMieux, Esq.
Eric C. Edison, Esq.
Florida Bar No. 16403
Florida Bar No. 010379
450 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com

*Attorneys for Cable News Network Inc.*

*Trump v. CNN*, Case No. 23-14044-E

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 26.1 and 28(a)(1) of the Federal Rules of Appellate Procedure and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellee Cable News Network Inc., by and through undersigned counsel, hereby certifies that CNN is ultimately a wholly owned subsidiary of Warner Bros. Discovery, Inc., a publicly traded corporation. Warner Bros. Discovery, Inc. has no parent company and, to the best of CNN's knowledge, no publicly held company owns ten percent or more of Warner Bros. Discovery, Inc.'s stock.  CNN further verifies that the following is a full and complete list of the trial judges and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1.    Brito, Alejandro

2.    Brito, PLLC

3.    Bryan Cave Leighton Paisner LLP

4.    Cable News Network, Inc.

5.    Edison, Eric C.

6.    Gunster, Yoakley & Stewart, P.A.

7.    Halligan, Lindsey

8.    Ifrah Law PLLC

9.    Klugh, Richard C.

*Trump v. CNN*, **Case No. 23-14044-E**

10.    LeMieux, George S.

11.    Richard C. Klugh, P.A.

12.    Schroeder, Eric. P.

13.    Singhal, Raag, District Judge

14.    Trusty, James M.

15.    Underwood, Jr., Brian M.

16.    Valle, Alicia O., Magistrate Judge

17.    Warner Bros. Discovery, Inc. (Nasdaq: WBD)

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

CNN respectfully submits that oral argument is unnecessary. This appeal does not raise any novel legal issues, and the briefs and record adequately present the parties' arguments.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE

    DISCLOSURE STATEMENT ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ........................................................................................v

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES..............................................................................2

STATEMENT OF THE CASE..................................................................................3

    A.     Statement of Facts. ..................................................................4

           1.     The Gravamen Of The Complaint: Trump Claims

                Comparing Him To Hitler Is Defamatory..................................4

           2.     Portions Of Only Five CNN Publications Are At Issue. ...........7

    B.     Course Of Proceedings.................................................................9

           1.     Trump Serves A Retraction Demand And Files Suit.................9

           2.     CNN Moves to Dismiss. ..........................................................10

           3.     The District Court Dismisses the Complaint with

                Prejudice...................................................................................11

            4.     The District Court Denies Trump's Motion For

                Reconsideration And/Or Rehearing..........................................12

           5.     Trump's Appeal. ......................................................................13

C.    Standard of Review ...............................................................14

SUMMARY OF THE ARGUMENT ....................................................15

ARGUMENT AND CITATIONS OF AUTHORITY ............................................16

I.  The District Court Properly Dismissed The Complaint. ...............................16

A.    Legal Standard.....................................................................16

B.    Comparing Political Figures To Historical Tyrants Is Protected
      Political Speech Of The Highest Order................................................18

      1.    Allusions To Past Tyrants, Despots And Villains Have
            Long Been Protected By The First Amendment.......................18

      2.    Trump Cannot State A Claim Because The Charge Of
            Being "Hitler-Like" Is Fundamentally Unprovable. ................22

      3.    Alternatively, Trump's Claims Fail Because The Charge
            Of Being "Hitler-Like" Is Figurative Speech. .........................25

      4.    Alternatively, Trump's Claims Fail Because The
            Publications Offer Only Pure Opinion.....................................29

C.    Trump's Miscellaneous Bases For Reversible Error Fail. .................32

      1.    Defamatory Meaning Was Properly Resolved By The
            Court.............................................................................32

      2.    Trump Cannot Proceed On Unpleaded Publications. ...............35

      3.    Trump's New Arguments Are Moot........................................37

D.      The Court May Also Affirm Dismissal Because Trump Did Not Plausibly Allege Actual Malice..............................................38

II. The District Court Did Not Abuse Its Discretion In Denying Reconsideration. ...........................................................................43

A.      Reconsideration Under Rule 59 Was Properly Denied.......................43

B.      The District Court Did Not Abuse Its Discretion In Denying Appellant's Post-Dismissal Request For Leave To Amend. ..............46

1.      Legal Standard For Amending Complaint After Dismissal With Prejudice...........................................................46

2.      The District Court Did Not Abuse Its Discretion In Denying Post-Dismissal Leave To Amend The Complaint...................................................................................48

CONCLUSION ..................................................................................51

CERTIFICATE OF COMPLIANCE.......................................................52

CERTIFICATE OF SERVICE ..............................................................52

# TABLE OF CITATIONS

**Page(s)**

## Cases

*A1A Burrito Works, Inc. v. Sysco Jacksonville, Inc.*,

    87 F.4th 1280 (11th Cir. 2023) ........................................................ 31, 40

*Access Now, Inc. v. Southwest Airlines Co.*,

    385 F.3d 1324 (11th Cir. 2004) ..................................................... 37, 38

*Air Wisc. Airlines Corp. v. Hoeper*,

    571 U.S. 237 (2014) ........................................................................ 17

*Arthur v. King*,

    500 F.3d 1335 (11th Cir. 2007) ...................................................... 44

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) .............................................................. 17, 36, 37

*Barry College v. Hull*,

    353 So. 2d 575 (Fla. 3rd DCA 1977) .............................................. 45

*Bezeau v. Cable Equip. Servs., Inc.*,

    2015 WL 3540009 (S.D. Fla. May 27, 2015) .................................. 37

*Blanchard v. Bergeron*,

    489 U.S. 87 (1989) .......................................................................... 33

*Buckley v. Littell*,

   539 F.2d 882 (2d Cir. 1976) ........................................................... 13, 23

*Byrd v. Hustler Magazine, Inc.*,

   433 So. 2d 593 (Fla. 4th DCA 1983) .......................................................34

*Cafeteria Emps. Union, Local 302 v. Angelos*,

   320 U.S. 293 (1943) ................................................................................29

*Campbell v. Emory Clinic*,

   166 F.3d 1157 (11th Cir. 1999) .............................................................49

*Church of Scientology v. Cazares*,

   638 F.2d 1272 (5th Cir. Mar. 1981) ............................................... 32, 33

*Citibank N.A. v. Data Lease Fin. Corp.*,

   904 F.2d 1498 (11th Cir. 1990) .............................................................49

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,

   406 F. Supp. 3d 1258 (M.D. Ala. 2019) ...............................................22

*Coral Ridge Ministries Media, Inc., v. Amazon.com, Inc.*,

   6 F.4th 1247 (11th Cir. 2021) ................................................ 13, 14, 17, 39, 40, 41

*Corsi v. Newsmax Media, Inc.*,

   519 F. Supp. 3d 1110 (S.D. Fla. 2021) ..................................................16

*Counterman v. Colorado*,

   600 U.S. 66 (2023) .................................................................................39

*Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO,*

724 F.2d 1552 (11th Cir. 1984) ............................................................... 46, 47, 48

*Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.,*

378 F.2d 377 (5th Cir. 1967) ................................................................34

*Donald J. Trump for President, Inc. v. CNN Broad. Inc.,*

500 F. Supp. 3d 1349 (N.D. Ga. 2020) ................................................... 39, 41, 42

*Dunn v. Air Line Pilots Ass'n,*

193 F.3d 1185 (11th Cir. 1999) ................................................................42

*Fla. Evergreen Foliage v. E. I. DuPont De Nemours & Co.,*

470 F.3d 1036 (11th Cir. 2006) ................................................................48

*Flynn v. Cable News Network, Inc.,*

2023 WL 5585196 (S.D. Fla. March 17, 2023) ................................................................45

*Freeman v. Rice,*

399 F. App'x 540 (11th Cir. 2010) ............................................................... 47, 48

*From v. Tallahassee Democrat, Inc.,*

400 So. 2d 52 (Fla. 1st DCA 1981) ................................................................29

*Garrison v. Louisiana,*

379 U.S. 64 (1964) ................................................................42

*Geier v. Missouri Ethics Com'n,*

715 F.3d 674 (8th Cir. 2013) ................................................................48

*Gertz v. Robert Welch, Inc.*,

    418 U.S. 323 (1974) ...................................................................... 21, 38

*Great Lakes Ins. v. Boat Rental Miami, Inc.*,

    2020 WL 264674 (S.D. Fla. Jan. 17, 2020)..........................................44

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,

    398 U.S. 6 (1970) ..........................................................................29

*Gulisano v. Burlington, Inc.*,

    34 F.4th 935 (11th Cir. 2022)............................................................15

*Harte-Hanks Commc'ns Inc. v. Connaughton*,

    491 U.S. 657 (1989) ........................................................................42

*Hay v. Independent Newspapers, Inc.*,

    450 So. 2d 293 (Fla. 2nd DCA 1984) ..................................................30

*Horsley v. Feldt,*

    304 F.3d 1125 (11th Cir. 2002) ................................................. 26, 27

*Horsley v. Rivera*,

    292 F.3d 695 (11th Cir. 2002) ...........................................................26

*Irving v. Mazda Motor Corp.*,

    136 F.3d 764 (11th Cir. 1998)...........................................................38

*Jacoby v. Cable News Network, Inc.*,

    2021 WL 5858569 (11th Cir. 2021) ...................................................41

*Jews for Jesus, Inc. v. Rapp*,

    997 So. 2d 1098 (Fla. 2008) ...................................................................17

*Keller v. Miami Herald Publ'g Co.*,

    778 F.2d 711 (11th Cir. 1985) ................................................ 17, 24, 32

*King v. Whitmer*,

    71 F.4th 511 (6th Cir. 2023) ....................................................................6

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,

    127 F.3d 122 (1st Cir. 1997) ..................................................................26

*Lobo v. Celebrity Cruises, Inc.*,

    704 F.3d 882 (11th Cir. 2013) ...............................................................49

*Long v. Satz*,

    181 F.3d 1275 (11th Cir. 1999) ...................................................... 49, 50

*MacPhee v. MiMedx Group, Inc.*,

    73 F.4th 1220 (11th Cir. 2023) ...................................................... 46, 47

*Marrache v. Bacardi U.S.A., Inc.*,

    17 F.4th 1084 (11th Cir. 2021) ..............................................................14

*McIntyre v. Ohio Elections Comm'n*,

    514 U.S. 334 (1995) ...............................................................................18

*Miami Herald Publ'g Co. v. Tornillo*,

    418 U.S. 241 (1974) ...............................................................................41

\* *Michel v. NYP Holdings, Inc.*,

   816 F.3d 686 (11th Cir. 2016) ................................................ 17, 38, 39, 40, 41, 43

\* *Milkovich v. Lorain J. Co.*,

   497 U.S. 1 (1990) ............................................................ 17, 21, 22, 26

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,

   597 U.S. 1 (2022) ...................................................................24

*NetChoice LLC v. A.G., Fla.*,

   34 F.4th 1196 (11th Cir. 2022)...........................................................42

\* *New York Times Co. v. Sullivan*,

   376 U.S. 254 (1964) ..................................................... 3, 4, 17, 38, 41

*Old Dominion Branch No. 496 v. Austin*,

   418 U.S. 264 (1974) ...........................................................29

*Ollman v. Evans*,

   750 F.2d 970 (D.C. Cir. 1984)............................................... 22, 23, 24

*Phila. Newspapers, Inc. v. Hepps*,

   475 U.S. 767 (1986) ...........................................................22

*Powell v. Whitmer*,

   144 S. Ct. 1003 (Mem) (2024) ...............................................6

*Raible v. Newsweek, Inc.*,

   341 F. Supp. 804 (W.D. Pa. 1972) ....................................................27

*Reider v. Phillip Morris USA, Inc.*,

    793 F.3d 1254 (11th Cir. 2015) ...............................................................36

*Rendon v. Bloomberg, L.P.*,

    403 F. Supp. 3d 1269 (S.D. Fla. 2019) ..................................................36

*Rubin v. U.S. News & World Reports, Inc.*,

    271 F.3d 1305 (11th Cir. 2001) ...................................................... 32, 34

*Sapuppo v. Allstate Floridian Ins. Co.*,

    739 F.3d 678 (11th Cir. 2014) ........................................................ 25, 39

*Stevens v. Tillman*,

    855 F.2d 394 (7th Cir. 1988) ..................................................................27

*Tillet v. BJ's Wholesale Club, Inc.*,

    2010 WL 11507322 (M.D. Fla. July 30, 2010) ......................................34

*Trump v. Biden*,

    951 N.W.2d 568 (Wis. 2020) ...................................................................6

*Trump v. Wis. Elections Comm'n*,

    983 F.3d 919 (7th Cir. 2020) ...................................................................6

* *Turner v. Wells*,

    879 F.3d 1254 (11th Cir. 2018) ........................... 17, 22, 25, 29, 30, 31, 32, 35, 40

*U.S. ex rel. Atkins v. McInteer*,

    470 F.3d 1350 (11th Cir. 2006) ...................................................... 47, 50

*United States v. Dean*,

    838 F. App'x 470 (11th Cir. 2020)........................................................44

*Wagner v. Daewoo Heavy Industries America Corp.*,

    314 F.3d 541 (11th Cir. 2002) ...........................................................46

*Ward v. Jackson*,

    2020 WL 8617817 (Ariz. Dec. 8, 2020).................................................7

*Whitaker v. City of Houston, Texas*,

    963 F.2d 831 (5th Cir. 1992) ....................................................... 47, 48

*Wood v. Raffensperger*,

    501 F. Supp. 3d 1310 (N.D. Ga. 2020) ..................................................6

**Statutes**

Fla. Stat. § 770.01 ....................................................... 9, 10, 34, 35, 36

**Rules**

11th Cir. R. 28-5 ...........................................................................4

Fed. R. Civ. P. 8 ..................................................................... 15, 36

Fed. R. Civ. P. 12 ............................................................. 17, 32, 48, 49

Fed. R. Civ. P. 15 ............................................................. 12, 46, 49, 50

Fed. R. Civ. P. 59 ....................................................... 12, 15, 44, 47, 48, 50

Fed. R. Civ. P. 60 ..........................................................................47

**Other Authorities**

12 *J. Moore et al.*, MOORE'S FEDERAL PRACTICE § 59.05(1)(c) (3d ed. 1997) .......47

Cass Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 774 (Jan. 1993)

....................................................................................................................24

Catullus (Alexander Hamilton), Catullus No. VI (Dec. 22, 1792), *in* FOUNDERS

ONLINE, NATIONAL ARCHIVES,

https://founders.archives.gov/documents/Hamilton/01-13-02-0184 (last visited

May 27, 2024) ..................................................................................19

Chris Cameron, *Trump Posts, Then Takes Down, Video Online With Headlines

About a 'Unified Reich'*, THE NEW YORK TIMES (May 20, 2024),

https://www.nytimes.com/2024/05/20/us/donald-trump-reich-video.html (last

visited May 27, 2024) ........................................................................21

Douglas O. Linder, *The Trial of John Peter Zenger and the Birth of Press

Freedom*, *in* HISTORIANS ON AMERICA: DECISIONS THAT MADE A DIFFERENCE

(George Clack 1st ed. 2010) ...............................................................19

Gavriel Rosenfeld, *How Americans Described Evil Before Hitler*, THE ATLANTIC

(Oct. 9, 2018), https://www.theatlantic.com/ideas/archive/2018/10/can-we-

compare-donald-trump-hitler/572194/ (last visited May 27, 2024).....................20

"Godwin's Law," OXFORD ENGLISH DICTIONARY,

   https://www.oed.com/dictionary/godwins-law_n?tl=true (last visited May 27,

   2024) .......................................................................................................28

JAMES ALEXANDER, A BRIEF NARRATIVE OF THE CASE AND TRIAL OF JOHN PETER

   ZENGER PRINTER OF THE NEW YORK WEEKLY JOURNAL (Palladium Press Ed.

   2001) .......................................................................................................18

Letter from James Monroe to Thomas Jefferson (Feb. 25, 1798), *in* FOUNDERS

   ONLINE, NATIONAL ARCHIVES,

   https://founders.archives.gov/documents/Jefferson/01-30-02-0093 (last visited

   May 27, 2024).......................................................................................20

Letter from John Brown to Thomas Jefferson (June 29, 1798), in FOUNDERS

   ONLINE, NATIONAL ARCHIVES,

   https://founders.archives.gov/documents/Jefferson/01-30-02-0316 (last visited

   May 27, 2024).......................................................................................20

Letter from John Lathrop to John Adams (Dec. 27, 1797), *in* FOUNDERS ONLINE,

   NATIONAL ARCHIVES, https://founders.archives.gov/documents/Adams/99-02-

   02-2267 (last visited May 27, 2024)....................................................19

Letter from John Paul Jones to Joseph York (Mar. 7, 1781), *in Supplement to the*

   *Boston Independent Chronicle* (2d ed. Apr. 22, 1782), *in* FOUNDERS ONLINE,

NATIONAL ARCHIVES, https://founders.archives.gov/documents/Franklin/01-37-02-0132 (last visited May 27, 2024)....................................................................19

Letter from Thomas Jefferson to Stevens Thomson Mason (Oct. 11, 1798), in FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Jefferson/01-30-02-0375 (last visited May 27, 2024)....................................................................20

Letter from Timothy Pickering to John Adams (Sept. 5, 1797), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Adams/99-02-02-2122 (last visited May 27, 2024)....................................................................19

Marianne LeVine, *Trump calls political enemies 'vermin,' echoing dictators Hitler, Mussolini*, THE WASHINGTON POST (Nov. 13, 2023), https://www.washingtonpost.com/politics/2023/11/12/trump-rally-vermin-political-opponents/ (last visited May 27, 2024)....................................................................21

PETER CHARLES HOFFER, THE FREE PRESS CRISIS OF 1800: THOMAS COOPER'S TRIAL FOR SEDITIOUS LIBEL (2011) ....................................................................18

*Results of Lawsuits Regarding the 2020 Elections*, CAMPAIGN LEGAL CENTER, https://campaignlegal.org/results-lawsuits-regarding-2020-elections (last visited May 27, 2024)....................................................................7

Second Continental Congress, *Declaration of Independence* (1776)....................................................................19

THOMAS PAINE, COMMON SENSE (Applewood Books Ed. 2002) ...........................19

*Wright, Miller & Kane*, 6 FED. PRAC. & PROC. § 1489 (3d ed.) .............................47

## <u>JURISDICTIONAL STATEMENT</u>

CNN adopts the Jurisdictional Statement in Appellant's Brief.

## STATEMENT OF THE ISSUES

I.    Whether the District Court's dismissal of this action with prejudice

should be affirmed because Appellant does not state plausible claims for

defamation against CNN.

II.    Whether the District Court's denial of Appellant's motion for

reconsideration should be affirmed because Appellant cannot identify any

error in the District Court's dismissal order and post-dismissal leave to

amend was properly denied.

## STATEMENT OF THE CASE

Appellant Donald J. Trump ("**Trump**") asserts he was defamed when CNN used the phrase "**big lie**" to describe his unfounded claim that the 2020 presidential election was "rigged" or "stolen." Trump claims "big lie" conveys he is "Hitler-like" and "[w]hen CNN compares Trump to Hitler, the comparison is false." These defamation claims are barred by the First Amendment and Florida law.

"Big lie" does not convey Trump *is* Hitler. Indeed, the principal failure of Trump's defamation claims, and the District Court's central basis for dismissal, is that any alleged "Hitler-like" inferences conveyed by the phrase "big lie" are not verifiable statements of fact. A charge as imprecise as being "Hitler-like" simply cannot be proven or disproven through any objective metric or measure, and it is clearly protected political rhetoric. This Nation was founded on rhetoric comparing political leaders to the historical villains of the time; and our courts have therefore zealously protected the right to criticize our leaders in the most evocative terms, including "vehement, caustic, and sometimes unpleasantly sharp attacks . . . ." *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The District Court also rejected the basic premise for Trump's claims, ruling CNN's publications were not defamatory, as "big lie" does not plausibly convey Trump is "Hitler-like" to the average reasonable reader. Likewise, the District Court correctly recognized that Trump's allegations of political bias cannot

3

establish falsity or actual malice. Last, the District Court was well within its discretion to deny Trump's motion for reconsideration, including the post-dismissal request to amend the complaint.

Trump fails to identify any error on appeal. Dismissal should be affirmed and so preserve this Nation's "profound national commitment" to an "uninhibited, robust and wide-open" debate of public issues. *Id.*

**A. Statement of Facts.**

**1. The Gravamen Of The Complaint: Trump Claims Comparing Him To Hitler Is Defamatory.**

After the 2020 presidential election, Trump claimed the election was "rigged" and "stolen" from him. CNN used the phrase "big lie" to describe these unsubstantiated and baseless claims. Trump then sued CNN, asserting claims for defamation *per se* and *per quod,*[1] based on five publications in which CNN allegedly used "big lie" to compare Trump to Hitler.

Trump claims the phrase "big lie" is defamatory because it is a "direct reference to a tactic employed by Adolf Hitler" and the Nazi party. (A21 at ¶ 23.[2])

---

[1] Count I of the Complaint is styled "Defamation *Per S*e." Count II is simply styled "Defamation," which under Florida law is substantively defamation "*Per Quod.*"

[2] Pursuant to 11th Cir. R. 28-5, CNN notes the reference format used herein: All record citations are to Trump's Appendix, Document No. 20, which is cited as "A" followed immediately by the page number(s) assigned by the Court's ECF system. Citations to Trump's appellate brief, Document No. 19 (hereinafter cited as "Br."), are also to the ECF-assigned page numbers.

Trump claims CNN used the phrase out of a "wanton and malicious" desire "to cause readers and viewers to associate [Trump] with the lowest of the low, to fear him, to not vote for him, and to support campaigns against him." (A21-22, A26 at ¶¶ 23, 29.) Writ large, these assertions set out Trump's attempted argument: that CNN is purposefully associating Trump with Hitler to harm him politically.

This purported "association" between Trump and Hitler is the central focus of the Complaint. In Trump's own words, "The focus of the Complaint is . . . a CNN campaign to wrongfully liken President Trump to Adolf Hitler." (A100.) Accordingly, this is the theory of falsity—the *sole* theory of falsity—that reappears throughout the whole length of the Complaint:

> 15.    Most notably, and the subject of this complaint, is CNN's persistent association of the Plaintiff to Adolf Hitler and Nazism. . . .
>
> * * *
>
> 22.    One of the most pervasive associations between the Plaintiff and Hitler that CNN has employed is its use of the term the "Big Lie" in relation to the Plaintiff's stated concerns about the integrity of the election process for the 2020 presidential election.
>
> * * *
>
> 39.    CNN . . . uses the term in relation to the Plaintiff to create a false and incendiary association between the Plaintiff and Hitler.
>
> * * *
>
> 41.    These defamatory statements, which associate the Plaintiff's character with that of Hitler, are reasonably understood to be statements of fact (as opposed to hyperbole or mere opinion) regarding the Plaintiff and were reasonably understood by readers and viewers to be statements of fact (and not hyperbole or mere opinion): readers and viewers understood that the Plaintiff would be Hitler-like in any future political role.
>
> 42.    These statements are false and defamatory *per se*.

* * *

> 46.    When a public official, or political candidate is likened to Hitler, it is defamation *per se* . . . .

(A16, A21, A29-30 at ¶¶ 15, 22, 39, 41-42, 46; *see also* A26, A30-37 at ¶¶ 29, 45, 47, 50, 51, 55, 59, 61, 62, 65, 68, 69, 74 (reiterating the same theory of falsity).)

The legitimacy of the 2020 presidential election, by contrast, is not before this Court. The Complaint is careful to not address or support Trump's claims of a "rigged" election. Notably, the Complaint does *not* claim: (1) CNN's use of "big lie" is false because the 2020 election was, in fact, "stolen" from Trump; or (2) CNN knew the election was "stolen" from Trump and therefore also knew (or recklessly disregarded) that it was false to characterize Trump's claims as a "big lie." While Trump now flirts with this new theory on appeal (i.e., arguing that his claims of a stolen election are true, and that it is defamatory for CNN to call them lies), that is not the theory of falsity that he alleged in his Complaint.[3]

---

[3] If that were the theory raised by Trump below, courts across the country have consistently rejected it in the context of challenges to the results of the 2020 presidential election—up to and including through the imposition of sanctions under Rule 11. *See King v. Whitmer*, 71 F.4th 511, 526 (6th Cir. 2023) (affirming in part an award of sanctions under Rule 11 because, *inter alia*, counsel lacked "a credible basis to allege that 'tens of thousands' of fraudulent votes were counted" in Michigan), *cert. denied sub nom. Powell v. Whitmer*, 144 S. Ct. 1003 (Mem) (2024); *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 927 (7th Cir. 2020) ("[E]ven on a broad reading of the Electors Clause, Wisconsin lawfully appointed its electors in the manner directed by its Legislature."), *cert. denied* 141 S. Ct. 1516 (Mem) (2021); *Wood v. Raffensperger*, 501 F. Supp. 3d 1310, 1326 (N.D. Ga. 2020), *aff'd* 981 F.3d 1307 (11th Cir. 2020) (affirming on lack of standing and mootness); *Trump v. Biden*, 951 N.W.2d 568, 577 (Wis. 2020) ("We conclude the

## 2. Portions Of Only Five CNN Publications Are At Issue.

The Complaint has a separate section titled "Defamation That Is the Subject of This Complaint." (A21.) In it, Trump claims "big lie" was used "more than 7,700 times on CNN since January of 2021." (A23 at ¶ 27.) The Complaint then identifies five CNN publications ("***Publications***") as "examples" of the purported defamation. (A23-25 at ¶ 28.)

The Publications include four online opinion pieces and one telecast:

1. *"Trump's Big Lie wouldn't have worked without his thousands of little lies,"* published January 25, 2021, which contended Trump is "a leader of authoritarian intentions and tendencies" and analogized Trump to Xi Jinping and Viktor Orbán. (A23-34 at ¶ 28.a.) The author used "big lie" to describe Trump's claim that he won the 2020 presidential election "by a landslide." (*Id.* at ¶ 28.a n.30 (providing Web address to full op-ed).)

---

challenge to indefinitely confined voter ballots is without merit, and that laches bars relief on the remaining three categories of challenged ballots."), *cert. denied* 141 S. Ct. 1387 (Mem) (2021); *Ward v. Jackson*, 2020 WL 8617817, at *2 (Ariz. Dec. 8, 2020) ("[T]he challenge fails to present any evidence of 'misconduct,' 'illegal votes' or that the Biden Electors 'did not in fact receive the highest number of votes for office,' let alone establish any degree of fraud or a sufficient error rate that would undermine the certainty of the election results . . . ."), *cert. denied* 141 S. Ct. 1381 (Mem) (2021). The forgoing examples are far from exhaustive. *See Results of Lawsuits Regarding the 2020 Elections*, CAMPAIGN LEGAL CENTER, https://campaignlegal.org/results-lawsuits-regarding-2020-elections (last visited May 27, 2024).

2. "*Donald Trump just accidentally told the truth about his disinformation strategy*," published July 5, 2021, which compared Trump's own words with the words of Joseph Goebbels, the Nazi propagandist, but does not actually include the phrase "big lie." (A24 at ¶ 28.b n.31.)[4]

3. "*Donald Trump's mental health becomes an issue again*," published September 15, 2021, which referred to Trump's claim "that the election was somehow stolen" as the "big lie" that Trump "continued to push . . . despite there being zero actual evidence to back up that belief." (A24-25 at ¶ 28.c.)

4. CNN's *State of the Union*, aired January 16, 2022, which used the phrase "big lie" in reference to Trump's claim of a "rigged election" (and played a video clip of Trump using "big lie" in reference to his detractors) during a broader segment on efforts to restrict voting rights in several states as well as to delegitimize or even block election results. (A25 at ¶ 28.d.)

5. "*Here's the terrible reality: Trump's election lie is on the march*," published February 11, 2022, which used "big lie" in reference to Trump's election claims and discussed the extent to which Trump's

---

[4] Trump himself stated: "If you say it enough and keep saying it, they'll start to believe you." (A138 n.2.)

claims have (based on polls) undermined confidence in American elections. (*Id.* at ¶ 28.e.)

For each, Trump claims CNN used "big lie" to "create[] a false and incendiary association between [Trump] and Hitler" that conveys Trump will "be Hitler-like in any future political role." (A29, A33-34 at ¶¶ 39-42, 59-62.)[5] The Complaint asserts CNN "knew the association of [Trump's] character with Hitler was false, defamatory, and inflammatory" and further asserts the actual malice standard is satisfied or does not apply because CNN used "big lie" unfairly in "seek[ing] to participate in the political arena by offering propaganda." (A10-11, A21-22, A26-28, A34 at ¶¶ 1, 12-14, 23, 29-35, 47 n.41.)

### B. Course Of Proceedings

#### 1. Trump Serves A Retraction Demand And Files Suit.

In a July 2022 "Notice Letter" served on CNN under Fla. Stat. § 770.01, Trump demanded retraction of thirty-seven specific CNN publications in which CNN addressed Trump's election claims. (A42-68.) The Letter claimed the articles unfairly "characteriz[ed Trump] as a 'liar'" because Trump "genuine[ly]" believed he did not lose the 2020 presidential election. (A52.) CNN responded (correctly) that Trump had "not identified a single false or defamatory statement in [the]

---

[5] The Complaint uses the shorthand phrase "Hitler-like" *four times* to describe the Publications' purported falsity. (A29, A31, A33-35 at ¶¶ 41, 51 61, 69.)

letter" and "[i]t is well-established that the outcome of the 2020 presidential election was unaffected by fraud . . . ." (A13-14 at ¶ 10 n.5.)

Trump filed his Complaint on October 3, 2023. (A10-38.) Notwithstanding the Notice Letter's focus on whether Trump subjectively believed his own claims of a stolen election, the Complaint instead alleged CNN defamed Trump by using the phrase "big lie" to draw associations between Trump and Hitler. (*See generally id.*) In so doing, Trump explicitly based his claims on the five Publications outlined above. (A23-25 at ¶ 28.)

### 2. CNN Moves to Dismiss.

In November 2022, CNN moved to dismiss on several grounds, including because the Publications did not contain any provably false statement of actual fact, and because Trump did not plausibly allege CNN acted with actual malice. (A70-91.)

Trump's December 2022 response conceded his "specific claims for relief are distilled" to the Publications listed in the Complaint, as "each of the five publications that were noticed to Defendant under Florida Statute Section 770.01 provide ample basis for his claims." (A105-106.) As to falsity, the response brief confirmed the purported falsity at issue was that "CNN uttered statements that falsely equated him with Hitler together with CNN falsely asserting that, in a future term in office, Plaintiff will be Hitler like," and "[w]hen CNN compares

Trump to Hitler, the comparison is false." (A94 (citing Complaint).) The response did not elaborate on how or why the comparison is "false," claiming a plaintiff need not "plead facts that show why a false statement is, in fact, false." (A94 n.2.)

CNN's reply brief ended the briefing on the motion to dismiss in January 2023. (A114-125.) Despite the passage of eight months between when CNN first moved to dismiss and the entry of the Court's order resolving that motion, Trump did not seek leave to amend the Complaint at any point while CNN's motion was pending. (*See generally* A4-8 (containing docket sheet).)

### 3.  The District Court Dismisses the Complaint with Prejudice.

The District Court dismissed Trump's Complaint with prejudice in July 2023, explicitly directing the Clerk of Court to "**CLOSE** this case." (A147.)

In its Order, the District Court first noted this "case involves political speech of the highest order." (A142.) After identifying the only Publications at issue, (A143 n.4), the Court found that "Trump's defamation claims fail" because the statements in the Publications were not "false statements of fact." (A143.) The Order then walked through several points: (1) alleged "political enmity" or motivation to "undermine Trump's political standing" did not "establish falsity" or show CNN acted with actual malice; (2) the Publications were not defamatory in context, as Trump was impermissibly "stacking [] inferences" to construe "big lie" as suggesting Trump was Hitler-like; and (3) regardless, "even if the phrase 'the

11

Big Lie' could somehow plausibly compel a reasonable viewer to perceive Trump as 'Hitler-like' or 'authoritarian' . . . *[b]eing 'Hitler-like' is not a verifiable statement of fact* that would support a defamation claim." (A143-146 (emphasis added).)

### 4. The District Court Denies Trump's Motion For Reconsideration And/Or Rehearing.

Trump moved for reconsideration and/or rehearing in August 2023 under Fed. R. Civ. P. 59. (A149-164.) This motion focused on whether the Publications constituted "pure" or "mixed" opinion, whether the District Court prematurely decided the issue of defamatory meaning, and whether Trump sufficiently alleged actual malice. (*Compare* A152-159 *with* A95-97, A104-105, A110-111.) The motion did not, however, meaningfully address the District Court's core ruling on the issue of verifiable falsity. Within the same motion, Trump asked the Court to "Reconsider Its Order and Grant Plaintiff Leave to Amend The Complaint," citing Rule 15. (A159-160.) Trump asked to plead a defamation-by-implication claim, on the same facts. He did not set forth or attach a copy of the proposed amendment or explain how the claim materially differed from his pleaded defamation claims.

The District Court denied the Rule 59 motion, holding Trump did "not raise issues of manifest error" or "set forth reasonable grounds for amending his complaint when Plaintiff never moved to amend prior to dismissal." (A209.)

### 5. Trump's Appeal.

Trump now appeals two rulings: the dismissal of his Complaint and denial of his motion for reconsideration. (Br. at 12-13.)

As to his arguments concerning dismissal, Trump's brief does not contain any section dedicated to the centerpiece of the District Court's decision: that any "Hitler-like" comparisons or implications conveyed by the phrase "big lie" are not "verifiable statements of fact" or "provably false."[6] (A145-146 (Order).) Trump's brief does not mention the District Court's provable falsity decision in the Statement of Issues or Summary of Argument, and it does not mention cases central to the District Court's decision on provable falsity. (*See* A146 (citing, *inter alia*, *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976) and *Coral Ridge Ministries Media, Inc., v. Amazon.com, Inc.*, 6 F.4th 1247 (11th Cir. 2021).) The only material reference to the District Court's ruling on provable falsity is a bare statement that the District Court erred in ruling "big lie" was "not verifiable" because "the same types of allegations were sustained in the Nuremberg trials." (Br. at 30; *see also* Br. at 50 (referencing ruling that "Hitlerian" was "imprecise" without further discussion on verifiability).)

---

[6] As discussed below, "provable falsity" is a separate (albeit related) doctrine from issues related to rhetorical hyperbole and opinion. Yet Trump does not address "provable falsity" and only addresses hyperbole and opinion. (Br. at 35-49.)

Instead, Trump makes two main arguments as for why he believes dismissal was erroneous. The first and primary argument is Trump's assertion that the District Court did not consider the full context of CNN's use of "big lie" and, as a result, wrongfully concluded the Publications were rhetorical hyperbole or "pure" opinion rather than statements of fact or of mixed opinion. (Br. at 35-49.) Next, he contends a jury should decide whether the Publications have defamatory meaning. (*Id.* at 49-50.)

As to his post-dismissal motion, Trump asserts reconsideration was improperly denied because the District Court erred "by failing to consider the entirety of the circumstances surrounding CNN's publication of the challenged statements." (*Id.* at 55-56.) Trump further contends post-dismissal leave to amend should have been granted because "no judgment ever issued" and the District Court allegedly "did not determine that viable amendment was not possible or that dismissal of the complaint constituted dismissal of the action." (*Id.* at 52-55.)

### C. Standard of Review

The Court reviews dismissal for failure to state a claim *de novo*. *Coral Ridge*, 6 F.4th at 1251. "A prevailing party is entitled to defend its judgment on any ground preserved in the district court," and this Court "may affirm for any reason supported by the record, even if not relied upon by the district court." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (cleaned

14

up). The Court reviews denial of a motion for reconsideration under Rule 59 for abuse of discretion. *See Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941 (11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed the Complaint, and that decision should be affirmed for multiple reasons.

First, the District Court correctly concluded that "Hitler-like" associations are not actionable because they are not provably false, which Trump fails to address.

Second, irrespective of provable falsity, any "Hitler-like" associations constitute protected non-literal speech and also pure opinion under the First Amendment and Florida law. Dismissal may be affirmed on these independent bases.

Third, Trump's arguments concerning other errors in the District Court's dismissal order are meritless. A motion to dismiss was the proper vehicle for assessing whether the Publications are "defamatory." Additionally, Trump's Complaint specifically pleaded five instances of purported defamation. Trump cannot retroactively expand the scope of his claims to include other publications when his Complaint did not comply with Fed. R. Civ. P. 8 as to such publications.

Fourth, dismissal can also be affirmed on the independent ground that the Complaint does not plausibly allege actual malice. The District Court ruled that Trump's allegations of CNN's supposed political enmity toward Trump are not evidence of actual malice, this ruling was not challenged on appeal, and Trump also fails to demonstrate the Complaint plausibly pleaded actual malice.

Last, the District Court properly denied Trump's motion for reconsideration. Just as there was no error in the dismissal order, there was no manifest error that warranted reconsideration by the District Court. Further, the District Court correctly denied Trump's post-judgment leave to amend. Trump's request was untimely and procedurally improper. Trump failed to attach a copy of his proposed amendments or meaningfully describe their substance, and he did not otherwise explain how an amendment would cure the reasons for dismissal.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    The District Court Properly Dismissed The Complaint.

#### A.    Legal Standard.

To state a claim for defamation under Florida law, Trump was required to plead the following five elements: (1) publication; (2) falsity; (3) fault amounting to actual malice (as Trump is a public figure); (4) damages;[7] and (5) the statement

---

[7] Florida does not recognize presumed damages in actions against media defendants. *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021). Thus, Trump was required to explicitly plead actual damages for his

must defame the plaintiff. *Turner v. Wells*, 879 F.3d 1254, 1261-62 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098 (Fla. 2008)).

Trump does not contest he is a public figure. Undisputedly, the Publications are political speech addressing matters of utmost public concern (i.e., the 2020 presidential election). Therefore, the full panoply of First Amendment protections applies, e.g., *Coral Ridge*, 6 F.4th at 1252, and the Complaint must plead facts plausibly demonstrating: (1) the alleged statements are "provable as false," *Milkovich v. Lorain J. Co*., 497 U.S. 1, 19-20 (1990); (2) the statements convey "actual facts" (as opposed to hyperbole), *id*. at 20; (3) the statements are "materially false," *Air Wisc. Airlines Corp. v. Hoeper*, 571 U.S. 237, 246 (2014); and (4) CNN made the statements with "actual malice," *Sullivan*, 376 U.S. at 280. In sum, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *See Turner*, 879 F.3d at 1262 (applying Florida law) (citing *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985). While the Court must accept fact allegations "as true" on a Rule 12(b)(6) motion to dismiss, the Court need not accept or defer to conclusory allegations or legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Michel v. NYP Holdings*,

_____

defamation *per se* claim and special damages for the defamation *per quod* claim. He did neither. (A78 at n.2.)

*Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (adopting plausibility standard for actual malice).

**B.    Comparing Political Figures To Historical Tyrants Is Protected Political Speech Of The Highest Order.**

By its own terms, the Complaint's central conceit is simple: *any* comparison between a political candidate and Hitler is actionable defamation. (A30 at ¶ 46.) Trump cannot proceed on such a claim.

**1.    Allusions To Past Tyrants, Despots And Villains Have Long Been Protected By The First Amendment.**

This Nation was founded on rhetoric comparing political leaders to historical despots and villains. Such speech is protected by the First Amendment.

As far back as 1735, American colonists began to reject attempts to restrict the criticism of political leaders.[8] During the American Revolution, American

---

[8] In the Zenger trial, the colonial crown attorney of New York prosecuted printer John Peter Zenger for seditious libel for Zenger's publication of harsh, anonymous criticisms of William Cosby, New York's royal governor. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 361 (1995) (Thomas, J., *concurring in judgment*); PETER CHARLES HOFFER, THE FREE PRESS CRISIS OF 1800: THOMAS COOPER'S TRIAL FOR SEDITIOUS LIBEL 10-11 (2011). Defamation at the time did not allow the defense of "truth"; thus, a defendant could be held strictly liable for printing defamatory, but true, material. *Id.* at 12-13. Regardless, Zenger's attorney Andrew Hamilton argued that free people "have a right to publicly remonstrate against the abuses of power in the strongest terms, to put their neighbors upon their guard against the craft or open violence of men of authority . . . ." *Id.* at 16; JAMES ALEXANDER, A BRIEF NARRATIVE OF THE CASE AND TRIAL OF JOHN PETER ZENGER PRINTER OF THE NEW YORK WEEKLY JOURNAL 81 (Palladium Press Ed. 2001). The jury agreed, acquitting Zenger in defiance of Gov. Cosby's attempt to silence criticism of himself. *Id.* at 101. Fifty years later, Gouverneur Morris, one of the

revolutionaries called King George III of England "Pharaoh,"[9] "Nero,"[10] and

"Tyrant."[11] After the Revolution, the competing Federalist and Republican factions

filled the presses and correspondence with invectives similar to those once hurled

at the British. The Federalist faction called the Republicans "political pharisees,"[12]

the "House of Saul,"[13] and "Jacobins."[14] The Republicans responded in kind by

---

Constitution's principal drafters, called the Zenger trial "the germ of American freedom." Douglas O. Linder, *The Trial of John Peter Zenger and the Birth of Press Freedom*, *in* HISTORIANS ON AMERICA: DECISIONS THAT MADE A DIFFERENCE 1, 19 (George Clack 1st ed. 2010).

[9] THOMAS PAINE, COMMON SENSE 34 (Applewood Books Ed. 2002).

[10] Letter from John Paul Jones to Joseph York (Mar. 7, 1781), *in Supplement to the Boston Independent Chronicle* (2d ed. Apr. 22, 1782), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Franklin/01-37-02-0132 (last visited May 27, 2024).

[11] Second Continental Congress, *Declaration of Independence* (1776).

[12] Catullus (Alexander Hamilton), *Catullus No. VI* (Dec. 22, 1792), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Hamilton/01-13-02-0184 (last visited May 27, 2024).

[13] Letter from John Lathrop to John Adams (Dec. 27, 1797), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Adams/99-02-02-2267 (last visited May 27, 2024).

[14] Letter from Timothy Pickering to John Adams (Sept. 5, 1797), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Adams/99-02-02-2122 (last visited May 27, 2024).

calling the Federalists "Oliverians,"[15] "Monk [sic] & The Cavaliers,"[16] "the Inquisition,"[17] and general "royalists."[18] In the more than two centuries that followed, generations of Americans continued employing both sharp rhetoric and historical allusions as indispensable tools for political discourse—including against Hitler himself, comparing the dictator to figures as diverse as Napoleon III and Philip of Macedon. Gavriel Rosenfeld, *How Americans Described Evil Before Hitler*, THE ATLANTIC (Oct. 9, 2018), https://www.theatlantic.com/ideas/archive/2018/10/can-we-compare-donald-

---

[15] Letter from Thomas Jefferson to Stevens Thomson Mason (Oct. 11, 1798), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Jefferson/01-30-02-0375 (last visited May 27, 2024).

[16] *Id.* (referring to George Monck, an English duke instrumental to the restoration of the British monarchy after the interregnum).

[17] Letter from John Brown to Thomas Jefferson (June 29, 1798), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Jefferson/01-30-02-0316 (last visited May 27, 2024).

[18] Letter from James Monroe to Thomas Jefferson (Feb. 25, 1798), *in* FOUNDERS ONLINE, NATIONAL ARCHIVES, https://founders.archives.gov/documents/Jefferson/01-30-02-0093 (last visited May 27, 2024).

trump-hitler/572194/ (last visited May 27, 2024). As the former President, Trump is not immune to being subject to such comparisons.[19]

Against this historical backdrop, a robust body of First Amendment jurisprudence now recognizes that, when speech touches upon a matter of public concern, recovery in defamation is only permissible for false statements of *fact*. *Milkovich*, 497 U.S. at 19-23 (summarizing various constitutional doctrines concerning defamation). This goes beyond merely requiring that defendants be permitted raise truth as a defense; instead, as noted by the Supreme Court, allowing defendants to "avoid liability only by proving the truth of all injurious statements does not accord adequate protection to First Amendment liberties." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). Rather, free speech can only have adequate "breathing space" by accounting for the reality that speech is often *nonfactual*, and the First Amendment protects statements that are unprovable, figurative, or purely subjective. *Id.* at 339 ("Under the First Amendment there is no such thing as a false idea."). As such, the First Amendment protects non-factual speech through three

---

[19] Indeed, Trump himself recently brought upon such comparisons. *See* Chris Cameron, *Trump Posts, Then Takes Down, Video Online With Headlines About a 'Unified Reich'*, THE NEW YORK TIMES (May 20, 2024), https://www.nytimes.com/2024/05/20/us/donald-trump-reich-video.html (last visited May 27, 2024); Marianne LeVine, *Trump calls political enemies 'vermin,' echoing dictators Hitler, Mussolini*, THE WASHINGTON POST (Nov. 13, 2023), https://www.washingtonpost.com/politics/2023/11/12/trump-rally-vermin-political-opponents/ (last visited May 27, 2024).

separate but related doctrines: (1) "provable falsity" (which protects unprovable assertions); (2) the "actual facts" requirement (which protects nonliteral speech); and (3) "pure opinion" (which protects statements based upon disclosed facts).

The District Court properly dismissed Trump's claims on the issue of provable falsity, which Trump failed to address, thereby relieving this Court of the need to address the remaining doctrines. Regardless, as discussed below, all three doctrines provide an independent basis for affirming the District Court's dismissal.

### 2.    Trump Cannot State A Claim Because The Charge Of Being "Hitler-Like" Is Fundamentally Unprovable.

The requirement of provable falsity ensures "statements that are not readily capable of being proven false . . . are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262; *see Milkovich*, 497 U.S. at 19 (citing *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986)) ("a statement on matters of public concern must be provable as false before there can be liability under state defamation law"). The D.C. Circuit summarized the applicable standard succinctly in *Ollman v. Evans*: "[I]s the statement objectively capable of proof or disproof?" 750 F.2d 970, 981 (D.C. Cir. 1984) (*en banc*), *cert. denied*, 471 U.S. 1127 (1985).

Courts have repeatedly concluded that charged political labels are not actionable in defamation, as such labels "suffer[] from a 'tremendous imprecision of meaning and usage . . . in the realm of political debate.'" *E.g.*, *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D.

Ala. 2019) (holding designation of Plaintiff as "hate group" to not be provably false), *aff'd* 6 F.4th 1247 (11th Cir. 2021) (affirming on actual malice grounds). The leading hornbook decisions on this point are the D.C. Circuit's *en banc* decision in *Ollman* and the Second Circuit's decision in *Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977). In *Buckley*, the Second Circuit explained that "the use of 'fascist,' 'fellow traveler [of fascism],' and 'radical right' as political labels" against *The National Review's* founder William F. Buckley, Jr. are not "statements of fact," and instead "are concepts whose content is so debatable, loose and varying, that they are insusceptible to proof of truth or falsity." *Buckley*, 539 F.2d at 893-94. The D.C. Circuit reached the same conclusion in *Ollman* when a university professor filed suit for being called "an outspoken proponent of political Marxism," a charge which the *en banc* D.C. Circuit concluded was "obviously unverifiable." *Ollman*, 750 F.2d at 987 (quotations omitted). The D.C. Circuit held that such a charge could not support a claim for defamation, concluding "the First Amendment is endangered when attempts are made to prove" fundamentally unprovable statements because "the trier of fact may improperly tend to render a decision based upon approval or disapproval of the contents of the statement, its author, or its subject." *Id.* at 981.

"Big lie" does not readily convey that Trump is "Hitlerian."[20] But even if it did, the extent to which *anyone* is similar or dissimilar to Hitler is not factually provable by any objective metric, scale, or measure: "Everything is similar in infinite ways to everything else" and, conversely, different than everything else in infinite ways. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 29 (2022) (quoting, *inter alia*, Cass Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 774 (Jan. 1993)) (cleaned up). But without an objective means of measuring a quality as noumenal as "likeness," adjudicating the truth or falsity of whether Trump is "Hitler-like" invites the very same speculative verdicts that the provable falsity requirement exists to prohibit. *Ollman*, 750 F.2d at 981 ("The rule against allowing unverifiable statements to go to the jury is, in actuality, merely one of many rules in tort law that prevent the jury from rendering a verdict based on speculation."). Instead, such a comparison, if inferred from the phrase "big lie", presents a purely subjective and unprovable assertion—at most, an assessment of the moral qualities of Trump's actions, using Hitler as a historical exemplar for comparison. *Keller*, 778 F.2d at 718 ("The statement was not capable of verification; ordinarily, an individual's morality or immorality is not subject to

---

[20] As discussed herein, the District Court correctly determined the average reader would not make the same leap, which is independent reason for dismissal.

24

empirical proof."); *see also Turner*, 879 F.3d at 1264 (concluding accusation of

"'homophobic taunting' . . . is not readily capable of being proven true or false").

As such, the District Court correctly concluded "[b]eing 'Hitler-like' is not a

verifiable statement of fact that would support a defamation claim." (A146.)

Trump does not substantively challenge this ruling, and he fails to address cases

like *Ollman* and *Buckley*.[21] Both appeared in briefing below (*e.g.*, A81), and the

District Court's dismissal prominently relied on the latter (A145-146). Trump's

silence on appeal thereby forfeits any challenge to the principal reason for

dismissal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir.

2014) (appellant must challenge "every stated ground for the judgment"; any

missing challenge is deemed "abandoned" and "it follows that the judgment is due

to be affirmed").

### 3. Alternatively, Trump's Claims Fail Because The Charge Of Being "Hitler-Like" Is Figurative Speech.

Dismissal should also be affirmed because any "Hitler-like" inferences

flowing from "big lie" are protected political rhetoric, as the First Amendment

---

[21] Trump's glib assertion that "big lie" is a statement of fact because it accuses him of the same crimes as those tried at Nuremberg after World War II is meritless. (Br. at 30.) Not only is this not the purported falsity of which Trump complained in his Complaint, "big lie" does not plausibly convey that Trump participated in or will participate in war crimes such as the Holocaust. (*See* A145 (concluding "big lie" does not suggest Trump advocates genocide or persecution of Jewish individuals).)

"provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich*, 497 U.S. at 20.

Protection for political rhetoric, hyperbole, and figurative speech "reflects 'the reality that exaggeration and non-literal commentary have become an integral part of social discourse.'" *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quoting *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997)). As the First Circuit explained in *Levinsky's*, the protection for "imaginative expression," "rhetorical hyperbole," and other "loose, figurative" speech does not depend on whether such language, in some literal sense, may be technically provable, but rather depends upon the notion that "no reasonable person would believe [such language] presented facts." 127 F.3d at 128 ("[O]ur society has long since passed the stage at which the use of the word 'bastard' would occasion an investigation into the target's lineage or the cry 'you pig' would prompt a probe for a porcine pedigree.").

This Court's decision in *Horsley v. Feldt,* 304 F.3d 1125, 1133 (11th Cir. 2002) is instructive. In that case, this Court considered a defamation suit by the founder of "an anti-abortion Internet website known as 'the Nuremberg Files,' which listed the names of abortion providers" and would "graphically reflect which abortion providers had been wounded or killed." *Feldt,* 304 F.3d at 1128-29. One of the defendants drew direct comparisons between the plaintiff and the actual

perpetrators who murdered the abortion providers, and directly stated during an interview: "You have the blood of these doctors on your hands, because you have incited and you have inspired and conspired with others to result in what exactly has happened, that these doctors have been murdered." *Id.* at 1130. This Court affirmed judgment on the pleadings for said defendant, concluding that such statements "did not actually accuse Horsley of criminal action," but instead drew the analogy between the plaintiff's conduct and the actual murders for figurative purposes: to convey contempt for plaintiff and to express the defendant's belief that the plaintiff's conduct was comparable to, and in fact "the same, in her view, as if he had actually conspired with those who committed" the murders. *Id.* at 1133.

The purported "Hitler-like" associations of which Trump complains are no more actionable than the associations with murder at issue in *Feldt*. Moreover, even accepting Trump's strained reading of the term "big lie," similar allusions saturate American political discourse to such an extent that they amount to "no more than a verbal slap in the face . . . ." *See Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face; the target can slap back (as Stevens did)."); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 807 (W.D. Pa. 1972) ("[T]o call a person a bigot or other appropriate name descriptive of his political, racial,

religious, economic or sociological philosophies gives no rise to an action for libel. . . . [N]ot every annoying and embarrassing publication is a libel.").[22] Any suggestion that Trump is "Hitler-like" because of his "big lie" would simply be rhetorical flourish to express contempt for Trump's unfounded claim of a "rigged" or "stolen" 2020 election.

Protected rhetoric is clearly seen, for example, in how Jake Tapper used the phrase "big lie" in the January 16, 2022 Publication. (*See* A25 at ¶ 28.d.) Tapper used the phrase to describe Trump's claims of a "rigged election." (*Id.*) Even assuming this description somehow portrayed Trump as "Hitler-like," any such portrayal would be part of the broader rhetorical point of the segment—i.e., to censure Trump's promotion of policies restricting voting rights (including those based on his "deranged election lies"), particularly in contrast to the efforts of others (i.e., Martin Luther King III) "rallying to expand voting rights . . . ." (*Id.*) Indeed, the segment includes an example of Trump referring to his own opponents as "the big lie," (*id.*), underscoring the utility of the phrase as a means of expressing contempt. In that context, even if the phrase is interpreted as conveying

---

[22] Such widespread allusions have led to the development of the tongue-in-cheek principle called "Godwin's Law." "Godwin's Law," OXFORD ENGLISH DICTIONARY ("A facetious aphorism maintaining that as an online debate increases in length, it becomes inevitable that someone will eventually compare someone or something to Adolf Hitler or the Nazis."), https://www.oed.com/dictionary/godwins-law_n?tl=true (last visited May 27, 2024).

"Hitler-like" comparisons, such comparisons would be no different than the "loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies – like 'unfair' or 'fascist'– and not to falsify facts." *Cafeteria Emps. Union, Local 302 v. Angelos*, 320 U.S. 293, 295 (1943); *see also Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974) ("scab" was a protected rhetorical hyperbole showing "strong disagreement"); *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (use of term "blackmail" to criticize plaintiff's conduct was protected hyperbole and not accusation of committing an actual crime).

### 4.    Alternatively, Trump's Claims Fail Because The Publications Offer Only Pure Opinion.

Trump's defamation claims also fail because CNN's use of "big lie" is premised on disclosed and readily available facts and is therefore "pure" opinion.

The doctrine of pure opinion affords protection "when the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public." *Turner*, 879 F.3d at 1262 (citing *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981)). When the underlying facts are revealed or known to the audience, the conclusion drawn based upon those facts merely represents "a critical judgment made by the author." *From*, 400 So. 2d at 57. By contrast, "[m]ixed expression of opinion occurs when an opinion or comment is

29

made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." *Turner*, 879 F.3d at 1262. Whether a statement is pure or mixed opinion (or of fact) is a question of law for the Court and judged by the totality of the publication. *Id.* at 1263 ("[A] court should construe statements in their totality . . . ."); *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2nd DCA 1984).

Each of the Publications is pure opinion. For the four Publications that do use the phrase "big lie" (A23-25 at ¶¶ 28.a, 28.c, 28.d, 28.e), each recites Trump's claims that the 2020 presidential election was rigged, stolen, or fraudulent, and each uses "big lie" in reference to those claims. Assuming *arguendo* that "big lie" conveys Trump is "Hitler-like," the basis for any such opinion is disclosed on the face of the Publications or is otherwise generally known to the public at large— i.e., that Trump continues to declare himself to be the legitimate winner of the 2020 presidential election despite the lack of evidence that the outcome of the election was swayed through rigging, theft, or fraud. Trump's Complaint offered no basis to challenge either of these underlying premises, and thus cannot challenge the subjective conclusions that flow therefrom.

As the remaining Publication that does not use the phrase "big lie" (i.e., "*Donald Trump just accidentally told the truth about his disinformation strategy*,"

published July 5, 2021), it falls altogether outside Trump's pleaded theory of falsity. (A24 at ¶ 28.b.) This Publication instead simply compares a statement by Trump with a quote attributable to Nazi propagandist Joseph Goebbels. (*Id.*) The Publication comments that Trump's statement was a "near-replication" of Goebbels's statement. (*Id.*) As Trump does not challenge the accuracy of either statement, the author's comparison is protected pure opinion. *Turner*, 879 F.3d at 1265.

On appeal, Trump urges the Court to conclude that CNN's publications were, in fact, mixed opinion, suggesting that CNN's characterizations of his "election[] integrity" concerns as "lies." (*E.g.*, Br. at 35.) This purported falsity is not alleged anywhere in the Complaint, which attempts neither to provide factual support for Trump's claims that the 2020 presidential election was "stolen" nor to challenge CNN's characterization of those claims as "lies." Because Trump did not argue this purported falsity below, Trump has waived any argument based on the same. *See A1A Burrito Works, Inc. v. Sysco Jacksonville, Inc.*, 87 F.4th 1280, 1291-92 (11th Cir. 2023). Regardless, each Publication is still pure opinion, as the lack of factual basis for Trump's claims of election fraud is either stated within the publications themselves (e.g., A24-25 at ¶ 28.c (noting there is "zero actual evidence" for Trump's claim "that the election was somehow stolen")) or else are already known or available to the public at large (e.g., through the election results

31

themselves, as well as through the scores of judicial opinions rejecting challenges

to the same). Again, the underlying premises for CNN's conclusion—i.e., that

Trump is lying by claiming to have won the 2020 presidential election without

evidence of any impropriety that would have changed the outcome—were

unchallenged in the Complaint.

### C.    Trump's Miscellaneous Bases For Reversible Error Fail.

Although moot if this Court finds dismissal should be affirmed on other

grounds, CNN will address Trump's remaining arguments on dismissal.

### 1.    Defamatory Meaning Was Properly Resolved By The Court.

Trump also takes issue with the District Court deciding the Publications are

not defamatory on a motion to dismiss, claiming instead a jury should have

decided the issue. (Br. at 49-51.) This argument fails.

"Whether the statement is one of fact or opinion and whether a statement of

fact is susceptible to defamatory interpretation are questions of law for the court."

*Turner*, 879 F.3d at 1262-63 (citing *Keller*, 778 F.2d at 715). Accordingly, this

Court has repeatedly affirmed dismissal of defamation claims on Rule 12 motions

using the objective "reasonable" reader standard. *Rubin v. U.S. News & World

Reports, Inc.*, 271 F.3d 1305, 1308-09 (11th Cir. 2001) (affirming dismissal when

challenge statements when "a reasonable person would not read the article to be

defamatory to the plaintiff"); *Church of Scientology v. Cazares*, 638 F.2d 1272,

32

1289 (5th Cir. Mar. 1981) (affirming dismissal because "the words 'rip-off,' read in context, although uncomplimentary, were not defamatory as a matter of law"), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). This case is no different.

The District Court correctly concluded that "big lie," as used in the Publications, does not reasonably convey that Trump is "Hitler-like." (A144-145.) As the District Court clearly laid out, reaching Trump's preferred reading requires "a stacking of inferences that cannot support a finding of falsehood"—that CNN used "Big Lie" to describe Trump's election challenges, that "Big Lie" is a phrase attributed to Nazis, and that the public would understand "Big Lie" to be reference to Nazis. (*Id.* (citing *Cazares*, 638 F.2d at 1288).) Although Trump tries to distinguish *Cazares* on the facts by comparing the rhetorical impact of "big lie" versus "Helter Skelter" on readers (Br. at 44-46), he does not address the various leaps of logic and speculation a reader must undergo to infer "big lie" means Trump is in some nondescript way similar to Hitler (or will be if re-elected). Indeed, he does not even posit that a reasonable viewer would associate "big lie" with Hitler in the context of the Publications at issue, and he instead (incorrectly) fixates on social media comments that drew Hitler-like comparisons in response to

an entirely separate publication.[23] This effort is wasted, however, as "without a forced or strained construction," reading "big lie" naturally in the context of CNN's publications means exactly what its dictionary definition would suggest: a large falsehood. *See Tillet v. BJ's Wholesale Club, Inc.*, 2010 WL 11507322, at *5 (M.D. Fla. July 30, 2010) (internal quotations omitted) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983)).

Beyond Trump's meritless *ipse dixit* argument that "big lie" conveys he is immutably the same as Hitler, Trump claims the District Court should not have decided the issue because the defamatory statements at issue were "susceptible of two meanings." (Br. at 49 (citing *Rubin*, 271 F.3d at 1306).) Trump does not, however, identify any ambiguity in any statement or Publication, and in the same section explicitly says there is no such ambiguity. (Br. at 50 ("CNN did not, however, convey these terms in an ambiguous or vague way.").) Moreover, the

---

[23] Trump's brief mentions CNN's viewers actually drew "Hitler-like" comparisons based on CNN's reporting. The assertion is misleading and also irrelevant. First, the purported viewer comments identified in the Complaint were in response to a separate publication that did not form part of Trump's claims and was not included in Trump's Notice Letter. (*See* Compl. at ¶ 17.) Trump therefore could not sue on said publication. Fla. Stat. § 770.01. Two, even if these comments reflected a Publication at issue, the District Court correctly construed them as would the average reasonable reader—not the subjective interpretations of actual readers. *Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co.*, 378 F.2d 377, 381-82 (5th Cir. 1967) ("The language of the publication should not be given a tortured interpretation but should be construed as the common mind would understand it.").

District Court's ruling that "big lie" did not readily convey Trump is "Hitler-like" moots consideration of whether the Publications are ambiguous, as Trump must first establish at least one meaning is defamatory. *See Turner*, 879 F.3d at 1269 (defamatory meaning is "an issue of fact for the jury only where the publication is susceptible of two reasonable interpretations, one of which is defamatory.").

### 2.    Trump Cannot Proceed On Unpleaded Publications.

One of Trump's other main arguments on appeal is that "the district court failed to consider the totality of the fully articulated allegations of defamatory statements, including the more than sixty instances of defamation set forth in the" Notice Letter and "failed to analyze and consider the totality of the nearly 7,700 instances in which CNN had defamed Plaintiff with the 'Big Lie' allegation . . . ." (Br. at 28-29.) Yet why these purported issues justify reversal is ambiguous and citation-free, leaving the reader to speculate as to the proposed reversible error. (Br. 31-34.)

Insofar as Trump contends his defamation claims encompassed more than the five Publications identified as the "subject" of his claims, the Complaint itself limited the defamation claims to the five Publications excerpted in paragraph 28 of the Complaint. (A23-25 at ¶ 28.) In the motion to dismiss briefing, Trump further confirmed his "specific claims for relief are distilled to meet [the] statutory requirements" of Fla. Stat. § 770.01 and did not "bring a claim for each and every"

use of "big lie" in connection with Trump (though these other publications "serve[d] to support Plaintiff's specific claims"). (A105-106.) As such, Trump himself confirmed his claims are based on the identified Publications.

Trump never suggested, to CNN or to the District Court, that he intended to pursue claims on any other publications in the Notice Letter—let alone thousands of other publications that he never even asked CNN to retract in accordance with Fla. Stat. § 770.01, thus precluding any claim based on these previously unidentified articles or references. *See Reider v. Phillip Morris USA, Inc.*, 793 F.3d 1254, 1258 (11th Cir. 2015) (save for instances of "plain error … which rarely applies in civil cases, we do not consider arguments raised for the first time on appeal"); *Rendon v. Bloomberg, L.P.*, 403 F. Supp. 3d 1269, 1274 (S.D. Fla. 2019) (§ 770.01 requires specific pre-suit notice for each article being sued on). Moreover, even if not forfeited, any such claim altogether fails to satisfy Fed. R. Civ. P. 8 and the requirements of *Iqbal*. Trump cannot include allegations for just some Publications and then argue that these allegations generally satisfy the elements of defamation for every other publication cited in his Notice Letter. *See Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."). If Trump intends to pursue a claim based on any publication, Trump "must set out the substance of each allegedly

36

defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement." *Bezeau v. Cable Equip. Servs., Inc.*, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015). The Complaint did not take this basic step, and, without those facts, no defamation claim can be "plausible." *See Iqbal*, 556 U.S. at 678 (holding "'naked assertion[s]' devoid of 'further factual enhancement'" do not state a claim).

### 3. Trump's New Arguments Are Moot.

Finally, Trump offers a number of new arguments that were not presented to the District Court and so should not be considered. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1327-34 (11th Cir. 2004) (not considering "entirely new theory on appeal" when not presented to the district court).

First, Trump changes his theory of falsity again. Despite pleading that "Hitler-like" associations were the focus on his claims below, Trump now claims the District Court "mischaracterized the CNN statements suggesting [Trump] was 'Hitler-like,'" (Br. At 30), and instead offers different theories of falsity that maintain little consistency throughout the brief.[24] Trump never alleged these purported falsities in his Complaint, and he cannot "argue a different case from the

---

[24] The most common refrain is that "CNN's attribution of lies to Plaintiff with regard to the election's integrity was a false statement of fact by CNN . . . ." (*Id.* at 25.)

case [he] presented to the district court." *Access Now*, 385 F.3d at 1331 (quotations omitted) (quoting *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)). Second, Trump newly contends that his Complaint asserted claims for *all* publications listed in the Notice Letter, as well as the purported "7,700" times CNN used "big lie." (Br. At 28-29.) This argument contradicts basic pleading requirements and Trump's representation to the District Court concerning the scope of his own claims. (*See* A105-106.)

### D.    The Court May Also Affirm Dismissal Because Trump Did Not Plausibly Allege Actual Malice.

As a completely independent ground, the Court may also affirm dismissal because Trump did not and cannot plausibly allege CNN acted with "actual malice." *Michel*, 816 F.3d at 694 ("We are, of course, free to affirm [] dismissal on 'any ground that is supported by the record'"; affirming dismissal due to lack of plausible allegations of actual malice).

"Actual malice" requires showing the defendant made the defamatory publication "with knowledge that it was false or with reckless disregard" for its falsity. *Sullivan*, 376 U.S. at 280; *see also Gertz,* 418 U.S. at 342 ("[P]ublic figures . . . may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth."). A public figure plaintiff must therefore plead facts plausibly showing the defendant "actually entertained serious doubts" about the

factual accuracy of the publication or was "highly aware that the [publication] was probably false." *Michel*, 816 F.3d at 702-03; *see also Coral Ridge*, 6 F.4th at 1252-53 (affirming dismissal because conclusory and "bare-bone" allegations were "insufficient to show [defendant] doubted the truth of its designation" of plaintiff as a hate group).

On appeal, Trump does not substantively address actual malice, instead stating (inaccurately) that "the defamation element of actual malice . . . formed no part of the rulings on appeal" and the Complaint "more than sufficiently pled actual malice." (Br. at 51.)[25] To the contrary, the District Court explicitly addressed Trump's main allegation for actual malice, rejecting Trump's claim that supposed political bias and a purported desire to injure Trump politically plausibly demonstrated CNN's actual malice. (A144 (quoting *Donald J. Trump for President, Inc. v. CNN Broad. Inc.*, 500 F. Supp. 3d 1349, 1357 n.4 (N.D. Ga.

---

[25] In a footnote, Trump "requests that the Court revisit the actual-malice standard under *New York Times v. Sullivan*" because CNN's Publications allegedly go "beyond mere political positioning and reflects obsessional hatred and malice." (Br. at 51 n.8.) Aside from this unadorned assertion, Trump's brief does not mention any grounds for overturning *Sullivan*, waiving the issue. *See Sapuppo*, 739 F.3d at 681 (party abandons issue when appellate brief makes only "passing references" to the issue or it is mentioned "without supporting arguments and authority"). Besides, *Sullivan* is not ripe for reconsideration, as the Supreme Court just reaffirmed the continued validity of *Sullivan* in *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (confirming "a public figure cannot recover for the injury [a defamatory] statement causes unless the speaker acted with 'knowledge that it was false or with reckless disregard of whether it was false or not'").

2020)).) Instead, Trump was required to show a "knowing or reckless falsehood" by CNN. (A144.) Accordingly, Trump's passing reference to actual malice on appeal, without demonstrating how his Complaint *did* plausibly allege a knowing or reckless falsehood, did not properly preserve the issue, requiring affirmance. *Cf. A1A Burrito Works*, 87 F.4th at 1290-91 (issues only raised by "passing reference" in opening brief are not considered by Court "absent extraordinary circumstances").

Regardless, the Complaint does not plausibly allege CNN acted with actual malice, also requiring affirmance irrespective of whether Trump adequately preserved the issue on appeal.

First, actual malice requires detailed factual allegations plausibly showing CNN subjectively knew "big lie" falsely conveyed Trump was "Hitler-like." *Turner*, 879 F.3d at 1273 (citing *Michel*, 816 F.3d at 702-03); *see also Coral Ridge*, 6 F.4th at 1253 n.8. The Complaint, however, merely asserts conclusions such as CNN "knew the association of Plaintiff's character with that of Hitler was false . . . or [CNN] published the statements with reckless disregard for their truth or falsity," or that CNN was "repeatedly using inflammatory language" and this somehow demonstrates CNN knew the Publications were false.[26] (*See, e.g.*, A30-31

---

[26]  The Complaint also references two incidents, from 2012 and 2022, in which (now former) CNN employees expressed concern over the general appropriateness of Nazi allusions. (A22-23 at ¶¶ 24-26.) Neither incident involved the Publications

at ¶¶ 47, 55.a.) Trump never explains, however, how the mere fact that a statement is repeated or inflammatory demonstrates it was "fabricated[,] . . . wholly imaginary, . . . inherently improbable, or obviously worthy of doubt." *Michel*, 816 F.3d at 705. Such conclusory allegations should therefore be disregarded. *Coral Ridge*, 6 F.4th at 1253 n.8; *Jacoby v. Cable News Network, Inc.*, 2021 WL 5858569 at *5 (11th Cir. 2021) (*per curiam*) (bare allegation that defendant "reserved an intention to fabricate or otherwise misrepresent facts" was conclusory; affirming dismissal).[27]

The sole remaining allegations supporting actual malice all address CNN treating Trump "unfairly" due to CNN's alleged political bias against Trump. (*See e.g.*, A26-28 at ¶¶ 30-35 (alleging CNN's "disparate treatment" of Trump compared to other political figures "is a clear indicator of CNN's malice").) Actual malice, however, "is not satisfied merely through a showing of ill will or 'malice'

_____

or otherwise shows CNN subjectively doubted the truth of any Publication. Instead, these incidents describe separate and independent editorial decisions protected by the First Amendment. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

[27] Moreover, none of the Complaint's generalized allegations of actual malice are tied to the scienter of the persons within CNN who authored and were responsible for the Publications. *See Sullivan*, 376 U.S. at 287 ("the state of mind required for actual malice [must] be brought home to the persons in the . . . organization having responsibility for the publication"); *Trump for President*, 500 F. Supp. 3d at 1357 n.4 (dismissing defamation claim where "the complaint [did] not connect" allegations of actual malice "to the specific article in question").

in the ordinary sense of the term." *Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 666 (1989); *Garrison v. Louisiana,* 379 U.S. 64, 73 (1964) ("Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth."). This is particularly so here, as the District Court's unchallenged ruling that *political* bias is not evidence of actual malice is not only correct,[28] but it is also dispositive of Trump's defamation claims because Trump has not identified any other purported basis to plausibly show CNN subjectively doubted the veracity of its own Publications. *E.g.*, *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) ("Ill-will, improper motive, or personal animosity plays no role in determining whether a defendant acted with 'actual malice.'"); *Trump for President*, 500 F. Supp. 3d at 1357 n.4 (holding "[a]n intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice").

---

[28] Below and on appeal, Trump maintains media defendants can only rely on the actual malice standard for *nonpolitical* speech and not for *political* speech. (*E.g.*, A30 at ¶ 47 n.41 ("[T]hat standard does not apply when the media defendant . . . seeks to participate in the political arena . . . .")). Of course, this is wrong. As this Court has set out, the First Amendment applies when speech is "promot[ing] explicitly political agendas" precisely because that speech *is* political. *NetChoice LLC v. A.G., Fla.*, 34 F.4th 1196, 1214-15 (11th Cir. 2022) (decisions by social media platforms on what content to carry are editorial judgments and expression protected by the First Amendment particularly when political in nature).

Under the circumstances, if the Court were to affirm dismissal due to the actual malice issue, even setting aside the other bases for affirmance, the Court should affirm the dismissal with prejudice. While this Court indicated in *Michel* that a "dismissal based on the failure to plead facts giving rise to an inference of actual malice should be without prejudice," the Court equally noted in that case that "there [was] no reason to believe . . . amend[ing the] complaint would be futile or that some other substantial reason exists to deny leave." 816 F.3d at 706. Here, unlike *Michel*, any amendment would be futile. Trump's central argument for plausibly pleading actual malice was CNN's supposed animus toward Trump, not that CNN subjectively doubted its own Publications. Indeed, in his post-dismissal request for leave to amend, Trump did not propose *any* additional fact allegations regarding actual malice. (*See* A159-162.) Given these circumstances, and considering the "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation," *Michel*, 816 F.3d at 702, dismissal with prejudice should be affirmed.

## II.    The District Court Did Not Abuse Its Discretion In Denying Reconsideration.

### A.    Reconsideration Under Rule 59 Was Properly Denied.

Trump asserts his Rule 59 Motion was wrongly denied because the District Court applied "inapt and unduly constricted standards" in: (1) "failing to consider the entirety of the circumstances surrounding CNN's publication of the challenged

statements"; and (2) "appear[ing] to reframe its understanding of [the clear error] standard in a manner unrelated to the case." (Br. at 51-52, 55.)

"The only grounds for granting a motion for reconsideration under Fed. R. Civ. P. 59(e) 'are newly discovered evidence or manifest errors of law or fact." *United States v. Dean*, 838 F. App'x 470, 471-72 (11th Cir. 2020). "Clear error or manifest injustice occurs where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." (Br. at 55 (cleaned up) (quoting *Great Lakes Ins. v. Boat Rental Miami, Inc.*, 2020 WL 264674, at *6 (S.D. Fla. Jan. 17, 2020)).) "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (cleaned up).

Trump complains the District Court did not consider "huge numbers of statements, [and] visual imagery, unmistakably trying to link Plaintiff to Hitler and Nazism," but Trump does not identify any "circumstances," i.e., any context, that the District Court overlooked. (Br. at 55.) To the contrary, the District Court repeatedly acknowledged Trump's concern about CNN's use of "big lie" and reviewed the specific uses of "big lie" listed as the "defamation at issue" in the Complaint. (A137-140; *see also* A143 n.4 (noting that all allegations in the

complaint would be considered, but Trump alleged only five instances of purported defamation).) Further, the Complaint itself establishes the only statements at issue are those in the Publications; moreover, if Trump contends other publications must be considered when construing the Publications, that is a claim for defamation *per quod* and requires Trump to identify the other articles, demonstrate how they informed the average reader's understanding of the identified Publications, and then also show how the defamatory language resulted in "special," "out-of-pocket" damages. *See generally Flynn v. Cable News Network, Inc.*, 2023 WL 5985196 (S.D. Fla. March 17, 2023); *Barry College v. Hull*, 353 So. 2d 575, 578 (Fla. 3rd DCA 1977).

Second, there is no basis for reversible error in the District Court's citation to FSU's exclusion from the College Football Playoff as an example of "manifest error." (*See* A208 n.1.) The District Court did not improperly "reframe" the clear error standard: as Trump concedes, the District Court clearly cited and knew the applicable standard to apply, and Trump cites no clear error in the District Court's application of that standard. (Br. at 55-56.) Further, Trump does not identify any specific defect in the Court's footnoted illustration, and certainly not one to indicate the Court was wrong to deny Trump's motion.

45

**B.     The District Court Did Not Abuse Its Discretion In Denying Appellant's Post-Dismissal Request For Leave To Amend.**

**1.     Legal Standard For Amending Complaint After Dismissal With Prejudice.**

The District Court also did not abuse its discretion in denying Appellant's post-dismissal request for leave to amend the dismissed Complaint. (A159.) In the nearly eight months between when CNN filed its motion to dismiss and when the District Court granted the same, Trump never sought leave to amend. (A4-8 (docket sheet).) His right to do so expired upon the entry of said dismissal.

As recently re-affirmed by this Court in *MacPhee v. MiMedx Group, Inc.*, a plaintiff's unilateral right to amend its complaint under Fed. R. Civ. P. 15(a) terminates upon entry of dismissal. 73 F.4th 1220, 1250 (11th Cir. 2023) (citing *Czeremcha v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 724 F.2d 1552, 1556 (11th Cir. 1984)). Moreover, when a plaintiff does not seek amendment of a complaint when faced with a motion to dismiss, a district court is not required to provide that opportunity before the court dismisses the action with prejudice. *See Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*) ("A district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). But so long as the dismissal order is a full decision on the merits—i.e.,

final judgment was entered or dismissal "also constitutes dismissal of the action,"

as opposed to dismissal without prejudice, partial dismissal, or dismissal through

an order that otherwise indicates amendment is possible—then a post-dismissal

request for leave to amend is "inappropriate" and should be denied. *Czeremcha*,

724 F.2d at 1556 n.6; *see Freeman v. Rice*, 399 F. App'x 540, 544 (11th Cir. 2010)

(no abuse of discretion in denying leave to amend after complaint dismissed with

prejudice, citing *Czeremcha*); *Whitaker v. City of Houston, Texas*, 963 F.2d 831,

834 (5th Cir. 1992) (adopting same rule).

Once an action is dismissed in full, a plaintiff may move to amend the

complaint "on the basis of proposed amendments," but the request for leave must

meet the stringent standards of Rule 59 or 60. *MacPhee*, 73 F.4th at 1250; *U.S. ex

rel. Atkins v. McInteer*, 470 F.3d 1350, 1361 n.22 (11th Cir. 2006) ("[Rule 15(a)]

has no application once the district court has dismissed the complaint and entered

final judgment for the defendant. . . . Post-judgment, the plaintiff may seek leave to

amend if he is granted relief under Rule 59(e) or Rule 60(b)(6)."); *Wright, Miller

& Kane*, 6 FED. PRAC. & PROC. § 1489 (3d ed.); 12 *J. Moore et al.*, MOORE'S

FEDERAL PRACTICE § 59.05(1)(c) (3d ed. 1997). This "*Czeremcha* Rule" furthers

the Court's strong interest in the finality of litigation, as this Court does not

"countenance 'the old sporting theory of justice' or the use of the federal courts as

a forum for testing alternate legal theories *seriatim*." *Fla. Evergreen Foliage v. E. I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1042 (11th Cir. 2006).

>        **2.**    **The District Court Did Not Abuse Its Discretion In Denying Post-Dismissal Leave To Amend The Complaint.**

>        **a.**    **Trump's Post-Dismissal Request For Leave To Amend In Its Rule 59 Motion Was "Inappropriate" On Its Face.**

Trump's argument for leave to amend is predicated on a single assumption: no formal entry of judgment was entered and therefore the District Court did not dismiss the whole action. (Br. at 42.) That assumption is simply wrong per the aforementioned *Czeremcha* Rule. *See* 724 F.2d at 1556 n.6.

First, the District Court dismissed the case *with prejudice* on a Rule 12(b)(6) motion for failure to state a claim. (A147.) Dismissal *with prejudice*, particularly one on a Rule 12(b)(6) motion to dismiss for failure to state a claim, is itself an adjudication of the merits that "constitutes dismissal of the action." *See Freeman*, 399 F. App'x at 544 (internal quotations omitted) (court did not abuse discretion in denying post-dismissal requests for leave when dismissal with prejudice "clearly indicated" any amendment would be futile); *see also Whitaker*, 963 F.2d at 835 (dismissal order "constitutes dismissal of the action when it states . . . the complaint is dismissed with prejudice . . . dismissal of the complaint terminates the action even though the district court does not use those precise words"); *Geier v. Missouri Ethics Com'n*, 715 F.3d 674, 677 (8th Cir. 2013) (same; dismissal with

prejudice dismisses the "entire action," triggering *Czeremcha* Rule); *cf. Citibank N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501 (11th Cir. 1990) ("[D]ismissal of a complaint with prejudice satisfies the requirement that there be a final judgment on the merits.").

Second, even if the District Court had not explicitly stated "Plaintiff's Complaint (DE [1]) is DISMISSED WITH PREJUDICE," the Court's Order still dismissed the *whole* Complaint *in toto* on a Rule 12(b)(6) motion to dismiss, and further directed the Clerk to "close" the case and deny any other motions. (A146-147.) These two facts remove any doubt that any portion of the case was to remain in the District Court. *See Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013) ("[G]ranting defendant's motion to dismiss for plaintiff's failure to state a claim upon which relief can be granted operates as an adjudication on the merits.").

### b.    Trump's Request For Leave Does Not Meet The Rudimentary Requirements of Rule 15.

Further, even if Rule 15's "liberal" policy for granting leave were applicable here, the District Court properly denied Trump's request for leave to amend because it was and is procedurally deficient and substantively futile. *See, e.g.*, *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (to comply with Rule 15, a movant must either "set forth the substance of the proposed amendment or attach a copy of the proposed amendment"); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th

49

Cir. 1999) (leave to amend need not be given "when the amendment would prejudice the defendant, follows undue delays, or is futile.").

First, Trump should have sought leave by separate motion (and not buried such request as a proposal for alternative relief in a Rule 59 motion) and attached the proposed amendment or set forth the substance of same. *Satz*, 181 F.3d at 1279-80 ("Failure to properly request leave to amend . . . precludes the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint"); *see also McInteer*, 470 F.3d at 1362 (affirming denial of leave to amend under Rule 15 for failure to attach proposed amendment). Trump did neither, instead merely mentioning a desire to add a defamation-by-implication claim that duplicates the claims that the District Court just dismissed. (*See* A159-162; A193-194 (noting "Trump already essentially asserted a defamation-by-implication claim").

On appeal, Trump drops any pretense of adding a specific claim and/or factual allegations to the Complaint in support thereof, as his brief does not mention any proposed amendment or the substance of same. (Br. at 52-54.) Instead, Trump seems to ask for a general right to amend instead of offering specific amendments. This is of course improper, as it violates this Court's directives concerning requests for leave to amend. *See Satz*, 181 F.3d at 1279-80.

## **CONCLUSION**

DISMISSAL should be AFFIRMED.

/s/ Eric P. Schroeder
Eric P. Schroeder
Ga. Bar 629880
Brian M. Underwood, Jr.
Ga. Bar 804091
BRYAN CAVE LEIGHTON PAISNER
LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, Georgia 30309
Telephone:  404-572-6600
Facsimile:    404-572-6999
eric.schroeder@bclplaw.com
brian.underwood@bclplaw.com

George S. LeMieux, Esq.
Florida Bar No. 16403
Eric C. Edison, Esq.
Florida Bar No. 010379
GUNSTER, YOAKLEY & STEWART,
P.A.
450 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000
glemieux@gunster.com
eedison@gunster.com

51

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 11,873 words.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2308) in 14-point Times New Roman font.

By: */s/ Eric P. Schroeder*
Eric P. Schroeder

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties who have filed notices of appearance in this case under the Court's CM/ECF system. I further certify that on this date, I caused the requisite number of paper copies of this brief to be dispatched to the Clerk of Court, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St. N.W., Atlanta, Georgia 30303 via overnight delivery by FedEx.

By: */s/ Eric P. Schroeder*
Eric P. Schroeder